ANTHONY GOSTKOWSKI, Respondent, *v.* THE ROMAN CATHOLIC CHURCH OF THE SACRED HEARTS OF JESUS AND MARY et al., Appellants.

WILLIAM GOSTKOWSKI, an Infant, by ANTHONY GOSTKOWSKI, His Guardian ad Litem, Appellant, *v.* THE ROMAN CATHOLIC CHURCH OF THE SACRED HEARTS OF JESUS AND MARY et al., Respondents.

(Argued June 13, 1933; decided July 11, 1933.)

*Guy O. Walser, David Gilmartin, Pierson Hildreth* and *Julia L. Seider* for appellants in first above-entitled action.

*J. Harry Saxstien* and *Isidore Scheinberg* for respondent in first above-entitled action.

*J. Harry Saxstien* and *Isidore Scheinberg* for appellant in second above-entitled action.

*Guy O. Walser* for respondents in second above-entitled action.

POUND, Ch. J.  These actions were brought against defendants for the wanton desecration of the grave of the plaintiff Anthony's deceased wife who was the plaintiff William's deceased mother and the removal of the remains therefrom to another burial place.  The church is in Southampton, Long Island.  Plaintiff is a Pole.  His wife was an Irish woman.  They had four children.  She was a communicant and active member of the defendant church.

After his wife's death plaintiff Anthony bought a lot in the cemetery of the defendant church of which the defendant Father Killeen was the parish priest.  Mrs. Gostkowski was buried therein with the usual funeral rites of the church to which she and her family belonged.  This was on July 15, 1931.  Father Harrigan, the curate,

had charge of the funeral. Father Killeen was out of town. About three weeks after the funeral, Anthony came with one of the children to visit the grave and say a prayer by its side. They discovered that the funeral flowers had been moved to another grave and then learned that the body had been moved and reinterred in another lot. Then they went to see the defendant, Father Killeen. According to plaintiff's evidence he was abusive, dictatorial and harsh. He said in substance: " You Polish people should be glad to bury any old way. Any place is good enough for you. You have no cemetery of your own. If you don't like the place which is good enough for her and you too, you can go somewhere else and buy a plot."

Then it was disclosed that Father Killeen had ordered the body moved to a new lot without notice to the Gostkowski family, because the wrong lot had been sold to Mr. Gostkowski. It had already been sold to another. On August 28, 1931, Father Killeen wrote to plaintiff's attorney in a defiant manner again indicating that plaintiff had no cause to be dissatisfied with the treatment he had received.

The jury in the husband's case brought in a verdict for $2,000, which the Appellate Division reduced to $1,000. Two of the justices voted for reversal and a new trial.

Appellant contends that although compensatory damages should include damages for mental suffering and anguish (*Meagher* v. *Driscoll*, 99 Mass. 281, 285), the court erred in saying that punitive damages might be allowed if the jury should find that the acts of the defendants were " wilful and malicious and wanton." If this was error, reduction of the verdict would not cure it — at least if the verdict were so excessive as to indicate that punitive damages were included. (*Bishop* v. *New York Times Co.*, 233 N. Y. 446, 451.) We are, however, of the opinion that Father Killeen's whole conduct showed such conscious indifference to the effect of his acts on the

minds of the family of the deceased woman that the jury might well have found such acts " wilful and malicious and wanton." He acted as if the husband had no right to be considered and that plaintiff should consider himself fortunate to be permitted to bury his wife's body anywhere in the cemetery as of favor rather than of right — an inexcusable attitude to adopt toward the owner of a burial lot.

Punitive damages and damages for wounded feelings, though similar, are not the same. (*Bannister* v. *Mitchell*, 127 Va. 578; s. c., 16 A. L. R. 768.) Whoso disturbs a dead body merely to suit his own convenience does so at his own risk. He may do a wrong for which he should be punished. He knows what he is doing. If he is willful and malicious in his wrong-doing, he should be punished to deter others from acting likewise. The husband has the right to protect the remains of the dead which should be left undisturbed unless good reasons and proper regard for the proprieties permit removal. " The dead are to rest where they have been laid unless reason of substance is brought forward for disturbing their repose." (*Yome* v. *Gorman*, 242 N. Y. 395, 403.)

It has been said that it is only in cases where a body has been mutilated or destroyed that money damages may be recovered and that if there has been any other damage it is entirely sentimental and not pecuniary. (*Henry* v. *Vintschger*, 234 App. Div. 593; appeal dismissed, 260 N. Y. 578. Cf. *Meek* v. *State*, [Ind.] 185 N. E. Rep. 899.) The question in the case cited was one of pleading. The widow was contesting with her mother-in-law the right to select the place of burial. Everything was done regularly and in order by the cemetery association. Damages in such a case were said to be sentimental only. That case is no authority for a rule that there can be no recovery of money damages for mere arbitrary interference with dead bodies after interment.

Juries may be allowed to give damages that express

indignation at the defendants' wrong rather than a value set on plaintiff's loss. (*Voltz* v. *Blackmar*, 64 N. Y. 440, 444; Pollock on the Law of Torts [11th ed.], p. 190.) Considering the moderate degree of indignation manifested by the verdict herein, we cannot say that it was error to submit the question to the jury. The Appellate Division decided the question with a *dubitatur*, although it did not hold that the charge was erroneous.

The judgment in the husband's case should be affirmed, with costs.

As to the son's case, we conceive the rule to be that the surviving spouse whose duty it is to bury the deceased, has the sole right to sue, during his or her lifetime, for damages due to interference with the dead body. To such a one is intrusted the duty to guard the dead. True it may be that he may neglect to exercise such right. Others may then act. Possibly the surviving members of the deceased's family might join as plaintiffs (*Boyle* v. *Chandler*, 33 Del. 323), but it is inconceivable that each member of the family could maintain a separate action to recover for mental pain and anguish. In the multitude of such actions there is injustice. The son, therefore, had no cause of action. The complaint was properly dismissed. (Const. art. VI, § 8.)

In each action the judgment should be affirmed, with costs.

CRANE, LEHMAN KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not sitting.

Judgments affirmed.