75 So.2d 891 (1954)
Laura Celestine BLANCHARD et al.
v.
Shelly H. BRAWLEY, d/b/a Brawley Auto Parts Service.
No. 3907.
Court of Appeal of Louisiana, First Circuit.
November 18, 1954.
*892 Breazeale, Sachse & Wilson, Baton Rouge, for appellants.
Edward N. Engolio, Plaquemine, Eugene W. McGehee, Baton Rouge, A. J. Kling, Jr., Gonzales, for appellee.
LOTTINGER, Judge.
This is a suit by the mother and five brothers and sisters of Ernest Blanchard, for mental pain and anguish caused the petitioners as a result of the alleged wanton mutilation of the corpse of Ernest Blanchard. The mother seeks damages in the sum of $4,000 and each of the brothers and sisters seek damages in the sum of $2,000. The Lower Court awarded judgment in favor of petitioners and gave the mother damages in the sum of $2,000, and each of the brothers and sisters damages in the sum of $1,000. The defendant has appealed, and the plaintiffs have answered asking that the amounts be increased to the amounts asked for in the original petition.
This suit is not one for personal injuries. It is clearly and exclusively a suit for damages for mental pain, suffering, anguish, humiliation, etc. Each of the petitioners have a separate and distinct right of action. They have, presumably, been cumulated into this one demand for the purpose of convenience. Although the mother of deceased seeks damages in the sum of $4,000, which is beyond our jurisdictional amount as is set by Section 10 of Article 7 of the Constitution of Louisiana, we feel that the damages sought are grossly exaggerated; and we have, therefore, assumed jurisdiction of this appeal. We feel that the amounts in dispute are less than the sum of $2,000.
The facts, as found by the Lower Court, are as follows:
"The petition alleges in substance that on July 29th, 1952, at or about 1:40 o'clock P.M., Ernest Blanchard, then in the employ of one Kleinpeter, was driving a Chevrolet truck, with attached pole semi-trailer loaded with logs, South on Highway 168 in West Baton Rouge Parish, Louisiana, when the right front tire of the truck blew *893 out causing Blanchard to lose control of the truck with the result that the truck left the highway, turned over on its right side and in turning over shifted the load of logs forward pinioning Blanchard in the cab of the truck and causing his death; that after the truck turned over considerable gasoline from the gas tank and carburetor spilled and wasted on and around the cab and body of the truck and the surrounding ground; that despite repeated warnings of the fire hazard occasioned by the presence of gasoline, Defendant's Agents lighted an acetylene blowtorch to cut a chain binding the logs together for the purpose of removing the logs from the cab of the truck to permit extrication of decedent's body; that when the torch was lighted, the wasted gasoline ignited starting a fire which burned so badly that the casket containing the body was kept closed at the home and was not opened during the wake, and that the mutilation of decedent's body caused petitioners great mental pain and suffering because of their inability to properly view or wake the body immediately prior to its final interment. The mother seeks damages in the amount of $4,000.00 and the brothers and sister in the sum of $2,000.00 each.
"Defense filed an Exception of No Clause or Right of action which was referred to the merits at the request of Defendant's counsel. Defendant also filed an answer which admitted that Defendant's employees were acting within the scope and during the course of their employment with Defendant at the time the incident occurred, but denied that his employees were negligent in any respect, and, in the alternative, pled that if his employee's were guilty of any negligence, such negligence was not willful or wanton. The answer further pleads that repeated efforts had been made for a considerable time to remove the body from the wreckage but without success and, therefore, Defendant's Agents ultimately concluded that the only way to remove the body was to cut the chain binding the logs together so that the logs might be removed, thereby permitting removal of the body."
We feel that the petitioners have alleged a cause of action under the provisions of Article 2315 of the LSA-Civil Code which provides:
"Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; * * *."
Although the jurisprudence of this state is to the effect that one may not recover damages for mental pain and anguish resulting from physical damage to a third party, it is clear that the cause before us will not come under the said doctrine. The action presented by petitioners' petition is for mental pain and anguish caused by the negligent mutilation of the dead body of a near relative of the plaintiffs herein. The question is res nova in this stateno case on point has been cited, nor have we been able to find one.
There has evolved in this country the general rule that, although there is no property right to a dead human body in a commercial sense, there is a quasi property right in the nearest relative or next of kin of the deceased, said right being predicated on the universally recognized duty of relatives to bury their dead, which duty involves the right to possession and custody of the body for purposes of burial or sepulchre in the same condition that existed at the moment life departed. Those jurisdictions following this general rule recognize and enforce the right to damages for the mutilation of or indignity to a human corpse.
The general rule, as stated in Vol. 17, C.J., page 1144, paragraph 18c, is as follows:
"As the right to dispose of a corpse by decent sepulture includes the right to the possession of the body in the *894 same condition in which death leaves it, an action for damages will lie for the unauthorized mutilation of a dead body."
Furthermore, in 25 C.J.S., Dead Bodies, § 8, par. a. and c., pages 1025, 1026 and 1027:
"It is now well settled that an unlawful invasion or violation of the right to bury a corpse and preserve the remains is a tort, and is the subject of an action for damages. * * *
"As the right to dispose of a corpse by decent sepulture includes the right to the possession of the body in the same condition in which death leaves it, an action for damages will lie for the unauthorized mutilation of a dead body."
True the Courts of this state have not been previously presented with a claim for damages for mental anguish resulting from the mutilation of a human corpse. However, the Courts of this state have recognized the claim for damages for mental anguish, humiliation and embarrassment. In Humphreys v. Bennett Oil Corporation, 195 La. 531, 197 So. 222, 224, our Supreme Court awarded damages for the mental pain and anguish suffered by the petitioners as a result of the desecration of a cemetery wherein a close relative was buried. In that case the Court said:
"This court has repeatedly held that an action lies to recover damages for mental anguish, pain, and suffering caused by the fault of another, and that damages may be assessed `without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party'."
In Graham v. Western Union Telegraph Co., 109 La. 1069, 34 So. 91, the Court awarded petitioner damages for mental anguish resulting from defendant's failure to promptly deliver to plaintiff's wife a telegram announcing the serious illness and approaching death of her son.
We, therefore, feel that the prevailing rule of this state is to the effect that damages are recoverable for mental pain and anguish, and that, under the provisions of Article 2315 of the LSA-Civil Code, the petitioners have asserted a cause of action.
The facts show that the accident in which deceased was involved was caused by a blowout, which caused the truck to veer off the highway, hit a ditch and turn over on its right side. An eyewitness to the accident, who was following the truck, testified that Blanchard was pinned in the cab of the truck, but that he was alive shortly after the accident. When the truck ran into the ditch, the impact caused the logs on the trailer to be thrown forward, thus caving in the cab. Blanchard was pinned in under the steering wheel. A wrecker was called from Port Allen, and an attempt was made to release Blanchard from the wreckage, however, all attempts were unsuccessful. On arrival of the state police, some twenty minutes after the accident, Blanchard was dead. The police called for defendant's wreckers which arrived about one hour later.
The preponderance of the evidence shows that gasoline had leaked out of the gas tank of the truck onto the ground. Most of the witnesses testified that the smell of gasoline was apparent, and that small pools of gasoline had collected in the shoe-prints of the onlookers. An attempt was made to break the cab of the truck apart by the wreckers without success. As a last resort, the defendant's agent, who was apparently in charge of the attempt to remove the body, decided to use an acetylene torch to cut the chain holding the logs. His intention was apparently to remove the logs from the trailer and then attempt to remove the body from the cab.
Although the evidence is contradictory, it appears that some comment was made as to the use of a torch because of the fire hazard. Upon lighting the torch, a spark touched off the wasted gasoline, and a fire started. As a result of the fire, the corpse was burned. Several witnesses testified *895 that the body was burned beyond recognition.
In our opinion the defendant's agents were negligent in lighting the torch. Although they testified that they did not know of the presence of the gasoline, it is definite that gasoline was present, and we believe that they should have known of its presence. Several witnesses testified that the whole area smelled of gasoline. However, we do further believe that there were mitigating circumstances present. The evidence shows that all means were attempted to remove the body from the cab, before a decision was made to use the torch. The evidence further shows that two hours, or more, had been consumed in unsuccessful attempts to remove the body. The scene must have been a sad and dreadful one, as the testimony shows that the poor man's body was hopelessly pinned in the cab, and portions of the corpse were easily seen from the highway.
After removal of the body from the truck, the body was taken to a funeral home for embalming procedures. There is no question but that it was badly burned, and some witnesses testified that if they did not know who the body belonged to, they would not have recognized it.
Two of the petitioners viewed the body while it was still in the funeral home. The mother and the other petitioners did not see it until it was taken home in a casket. Upon seeing the body of her son, the mother passed out. Members of the family testified that the mother has been grief stricken since, that she cries "Saying if he wasn't burnt up like that, so she could see him." The brothers and sisters also testified of their dreadful thought of their oldest brother's body being so badly burned. Two of the brothers, who are truck drivers, testified that they often think of the incident while driving along.
Although we know that the petitioners must have had a dreadful experience in having their loved one turned over to them under such grievous circumstances, we must separate their feelings at learning of the untimely death of their son and brother from the fact that his body was burned in the fire. The damages sought are for the mutilation of the body only, as Blanchard was already dead when the defendant's wreckers arrived on the scene.
The assessment of damages in such cases is, to say the least, difficult. The facts show that the deceased did not live with any of the petitioners; he lived with a common-law wife. However, the petitioners testified that they were close, that deceased was the oldest child who they loved and revered.
Considering all of the circumstances presented by the record, we believe that the damages awarded by the Lower Court are extremely excessive. Although we know that the petitioners did suffer great grief and sadness upon being presented with the untimely death of their son and brother, which grief was enhanced by the fact that the body had been burned almost beyond recognition, we must keep in mind the fact that a great part of their mental grief and suffering was caused by the untimely death of the deceased, for which death the defendant cannot be held accountable.
It is our opinion that damages to the mother, for mental anguish, caused by the burning of her son's body should be assessed in the sum of $800; and that damages for each of the brothers and sisters should be in the sum of $250.
For the reasons assigned, the judgment of the Lower Court will be amended to reduce the judgment in favor of petitioner Laura Celestine Blanchard to the sum of $800, and to reduce the judgment in favor of Albert Blanchard, Ranaus Blanchard, Andrew Blanchard, Minola Blanchard Williams and Samuel Blanchard to the sum of $250 each, and as amended the judgment of the Lower Court will be affirmed.
Judgment amended and as amended affirmed.