FARLESS C. FISHER, ADMINISTRATOR (ESTATE OF RICHARD F. FISHER) *v.* CHARLES E. HODGE ET AL.

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, Js.

Argued November 2, 1971—decided February 8, 1972

*Irwin E. Friedman,* with whom were *Gary J. Friedman* and, on the brief, *Arthur E. Levy, Jr.,* for the appellants (defendants).

*John J. Hunt,* for the appellee (plaintiff).

HOUSE, C. J.   This is an action brought by the plaintiff as administrator of the estate of his adult son, Richard F. Fisher. The defendants are Charles E. Hodge and the Hertz Corporation, a Delaware corporation licensed to do business in Connecticut. A jury found the issues for the plaintiff and returned a verdict against both defendants in the amount of $62,500. From the denial of the defendant's motion to set aside the verdict and to render judgment in accordance with their motion for a directed verdict, the defendants have appealed to this court.

Although the defendants originally made numerous assignments of error, most of them have been abandoned. The defendants have based their appeal primarily on the single issue of whether the trial judge was correct in charging that the defendant Charles E. Hodge, hereinafter referred to as Charles, a brother of James E. Hodge, hereinafter referred to as James, was a member of James' "immediate family" as that term was used in a contract between James and the Hertz Corporation.

From the evidence, the jury could reasonably have found the following facts: Charles and James are brothers; both are over twenty-one years of age. Charles, who was single, resided with his parents at 22 Kenosia Avenue, Danbury. James, with his wife and three children, resided in a house known as 24 Kenosia Avenue which is on the same piece of property as the house known as No. 22 and in the rear of it. On March 15, 1968, Charles and James went to the Hertz rental agency which held a franchise from the defendant the Hertz Corporation. There, James entered into a written lease of indefinite duration with the agent of the defendants for the rental of a 1968 Ford. On the reverse side of the lease form, in fine print and among other provisions, appeared the following: "2. Under no circumstances shall vehicle be used, operated or driven: ... (E) by any person other than Customer, except (1) a member of Customer's immediate family; (2) Customer's employer; (3) an employee of Customer in the course of such employee's regular and usual employment by Customer; PROVIDED that any such person specified in (1), (2) or (3) must have first obtained Customer's permission, and PROVIDED FURTHER that no person, including Customer, shall operate or drive vehicle unless such person is a

qualified licensed driver and, if a member of Customer's immediate family, is 21 years of age or older. The foregoing restrictions are cumulative, and each of them shall apply to every use, operation or driving of vehicle." On April 12, 1968, the defendant Charles, a licensed operator, was driving the rented car with the permission of his brother James when it collided with the automobile driven by Richard Fisher, who died as a result of the collision. The court instructed the jury as to the provisions of § 14-154 of the General Statutes concerning the liability of the owner for damage caused by a leased car.[1] With respect to the restrictive clause in the rental agreement, the court charged that "the construction given by the Court to the words, 'a member of Customer's immediate family' is that the defendant, Charles E. Hodge, brother of James E. Hodge, was a member of James E. Hodge's immediate family and in operating the car in question, if he did so and if he did so with the permission of his brother James, would create a statutory liability on the part of The Hertz Corporation if he did so negligently, and if his negligence was the sole proximate cause of, or substantial factor in, causing the collision between the two cars." The defendants excepted to the charge and maintain in their appeal to this court that the contract provision limiting use of the automobile by individuals other than the customer and a member of his immediate family is sufficient to absolve the defendant the Hertz Corpo-

---

[1] "[General Statutes] Sec. 14-154. LIABILITY OF OWNER FOR DAMAGE CAUSED BY RENTED OR LEASED CAR. Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."

ration from liability under § 14-154 of the General Statutes when the automobile was being driven by the brother of the lessee.

Much of the argument in this case has centered around the meaning of the term "immediate family" as used in the rental contract. The word "family" is "a word of great flexibility, its meaning varying according to the connection in which it appears." Ballentine, Law Dictionary (3d Ed.). It is a word used in a variety of significations. *Rathbun* v. *Aetna Casualty & Surety Co.*, 144 Conn. 165, 168, 128 A.2d 327. In *Kiska* v. *Skrensky*, 145 Conn. 28, 33, 138 A.2d 523, this court noted the ambiguity of the term and the cases in which it had been interpreted in various ways and commented: "Throughout these and the many other cases involving the definition of 'family,' we have said that the word is one of flexible and uncertain meaning and will be construed differently as the circumstances require, in order that the meaning in which it is apparently used in any given case may be carried into effect. *Farnam* v. *Farnam*, 83 Conn. 369, 375, 77 A. 70. The word has several meanings. Primarily, it means a collective body of persons who live in one house under one head or management. Secondarily, it consists of persons of the same lineage or those who descend from one common progenitor. *Fratellanza Italiana* v. *Nugnes*, 114 N.J. Eq. 185, 187, 168 A. 589." On the other hand, Webster's Third International Dictionary reverses that order of priority of meaning, giving "a group of persons of common ancestry" priority in meaning over "a group of individuals living under one roof." The trial court concluded that in the context of this rental agreement Charles was a member of the "immediate family" of his brother James. We find no error in this conclusion, particularly because

of the qualifying word "immediate." When used in connection with the word "family" as meaning "a group of persons living under one roof" the limiting word "immediate" has no relevance because there exists no degree of membership in the group. An individual is either a member of the group living under the one roof or he is not. On the other hand, when "family" is defined as a group of persons of common ancestry, the word "immediate" is used to limit the degree of relationship which will be considered and the phrase "immediate family" takes on some meaning. Even then "immediate" does not provide us with a universal test which may be invariably applied to separate one class of relatives from another. If blood relationship or common ancestry should be taken as the decisive test, then a spouse would be excluded from membership in the family— an obviously ridiculous result. In the context of the automobile rental contract, the phrase may take on a variety of meanings. When a contract is subject to a number of interpretations, its language must be construed against the party who drew it. *Greenwich Contracting Co.* v. *Bonwit Construction Co.*, 156 Conn. 123, 129, 239 A.2d 519; *Wall* v. *Wason*, 146 Conn. 32, 36, 147 A.2d 200; *Dorne* v. *Williams*, 140 Conn. 193, 201, 98 A.2d 796. Thus, the court could reasonably and logically conclude that in the context of the rental agreement there was no contract prohibition against the use of the leased car by Charles with the permission of his brother James, the lessee.

In addition, we find merit to the further claim of the plaintiff that the defendant the Hertz Corporation is liable under the provisions of § 14-154 of the General Statutes regardless of the provisions of the rental contract restricting the use of the automobile

to specified individuals. His claim is that the legislature has unequivocally declared that the owners of rental automobiles shall be liable "to the same extent as the operator would have been liable if he had also been the owner" and that the defendant rental corporation may not escape liability as a third party through the use of limiting clauses in the rental contract.

In considering this statute in the past, this court has stated: "This cannot be regarded otherwise than as an expression of legislative judgment as to the extent—beyond the limitations of the general principles of *respondeat superior* and the 'family-car doctrine'—to which the owner of a motor vehicle which he entrusts to another should be liable for the acts of the latter." *Marshall* v. *Fenton,* 107 Conn. 728, 731, 142 A. 403. "The purpose of the statute was not primarily to give the injured person a right of recovery against the tortious operator of the car, but to protect the safety of traffic upon highways by providing an incentive to him who rented motor vehicles to rent them to competent and careful operators by making him liable for damage resulting from the tortious operation of the rented vehicles. . . . The rental of motor vehicles to any but competent and careful operators, or to persons of unknown responsibility, would be liable to result in injury to the public upon or near highways, and this imminent danger justified, as a reasonable exercise of the police power, this statute, which requires all who engage in this business to become responsible for any injury inflicted upon the public by the tortious operation of the rented motor vehicle. . . . The contract was made in Connecticut; at the instant of its making the statute made a part of the contract of hiring the liability of the defendant which the

plaintiff seeks to enforce. The law inserted in the contract this provision. The statute did not create the liability; it imposed it in case the defendant voluntarily rented the automobile. Whether the defendant entered into this contract of hiring was its own voluntary act; if it did it must accept the condition upon which the law permitted the making of the contract." *Levy* v. *Daniels' U-Drive Auto Renting Co.,* 108 Conn. 333, 336, 338, 143 A. 163. That condition was, by the terms of § 14-154, that the lessor of the motor vehicle "shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner." "[T]he purpose of the statute was to impose a liability akin in its nature to that of a principal for the acts of his agent." *Connelly* v. *Deconinck,* 113 Conn. 237, 239, 155 A. 231.

There is no claim that Charles acquired possession of the car from James, the lessee, by theft, fraud or duress. On the contrary, the only evidence in the record before us is that he was operating the car with the permission of James. The statute does not require that the operator be the lessee before statutory liability accrues to the owner-lessor for damages resulting from the operation of the vehicle. "When the language used in a statute is clear and unambiguous, its meaning is not subject to modification by construction." *Dental Commission* v. *Tru-Fit Plastics, Inc.,* 159 Conn. 362, 365, 269 A.2d 265; *State* v. *Simmons,* 155 Conn. 502, 504, 234 A.2d 835; *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36. "The statute must be applied as its words direct." *Dental Commission* v. *Tru-Fit Plastics, Inc.,* supra; *Obuchowski* v. *Dental Commission,* 149 Conn. 257,

265, 178 A.2d 537. Even if Charles, the operator, was not a member of the immediate family of the lessee, James, on the evidence the jury could reasonably and logically find that the defendant the Hertz Corporation was liable for the damages caused by his operation of the rented vehicle with the permission of James "while so rented or leased."

We find no error in the rulings of the court denying the motions to set aside the verdict and for judgment notwithstanding the verdict or in the judgment as rendered.

There is no error.

In this opinion the other judges concurred.