Nathaniel GOLSTON (and) Reatha Golston, minors, by their next friend and aunt, Gladys J. Martin, (and) Billy J. Golston (and) Gladys J. Martin, Plaintiffs-Respondents,

v.

LINCOLN CEMETERY, INC., a corporation, (and) Lawrence A. Jones Mortuary, Inc., d/b/a Lawrence A. Jones & Sons Funeral Chapel, (and) Douglas Investment Company f/k/a Lincoln Investment Company, Defendants-Appellants.

Gladys J. MARTIN, Plaintiff-Appellant,

v.

LAWRENCE A. JONES MORTUARY, INC., d/b/a Lawrence A. Jones & Sons Funeral Chapel, and Douglas Investment Company, f/k/a Lincoln Investment Company, Defendants-Respondents.

Nos. KCD 29015, KCD 29016 and KCD 29283.

Missouri Court of Appeals, Kansas City District.

Oct. 2, 1978.

Motion for Rehearing and/or Transfer Denied Nov. 13, 1978.

Application to Transfer Denied Dec. 18, 1978.

Gordon N. Myerson and Morris, Larson, King, Stamper & Bold, Kansas City, Mo., for Gladys J. Martin, appellant and Nathaniel Golston, Billy Golston and Reatha Golston, respondents.

Thos. J. Conway, Popham, Popham, Conway, Sweeny & Fremont, P. C., David M. Harding, Terrell, Van Osdol & Magruder, Kansas City, for Lawrence A. Jones Mortuary, Inc.

Before WELBORN, Special Judge, Presiding, PRITCHARD, J., and HIGGINS, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Action (Circuit Court 767,511) by children and sister of Eva Jane Parker, deceased, for actual and punitive damages for improper burial of decedent. Plaintiffs dismissed as against Lincoln Cemetery, Inc.; and, upon defendants' motion, the court dismissed the aunt as a plaintiff without prejudice, in favor of the Golston children as closest next of kin. The children each had a verdict for $15,000 actual damages against the under-

taker and the cemetery, and $2,000 punitive damages against the undertaker and $10,000 punitive damages against the cemetery. Upon remittitur as ordered by the court, judgment was entered for each child for $6,000 actual damages against both defendants, and which let stand their awards of punitive damages.

Action (Circuit Court CV76–2978–F), subsequently instituted by the sister of Eva Jane Parker, deceased, against the undertaker and cemetery for actual and punitive damages for improper burial of decedent, was dismissed on motions of defendants.

Appeal 29,015 by Douglas Investment Company, the cemetery, consolidated with appeal 29,016 by Lawrence A. Jones Mortuary, Inc., the undertaker, both from the judgment in 767,511, and appeal 29,283 by Gladys J. Martin from dismissal of her petition in CV76–2978–F. Upon joint motion of plaintiffs Golston and defendant Douglas Investment Company, which advised that the judgment in 767,511 "against Douglas Investment Company has been fully satisfied by the payment of a sum certain plus the agreement of Douglas Investment Company to dismiss its Appeal, No. 29015 and plus the agreement of plaintiff Gladys Martin to dismiss her Appeal No. 29283 as to defendant Douglas Investment Company only," and requested dismissal accordingly, this court dismissed appeal 29,015 of Douglas Investment Company and appeal 29,283 of Gladys Martin as against Douglas Investment Company. The issues thus remaining go to Jones's liability to plaintiffs Golston, 29,016, and the dismissal of Gladys Martin's petition as against Jones, 29,283. 29,016 affirmed; 29,283 reversed and remanded.

On November 5, 1971, Eva Jane Parker, mother of Nathaniel, Reatha, and Billy J. Golston, minors, died in Kansas City, Missouri. Her sister, Gladys J. Martin, and her son Billy made arrangements for burial of Mrs. Parker with Lawrence A. Jones Mortuary, Inc., d/b/a Lawrence A. Jones & Sons Funeral Chapel. The arrangements were embodied in a memorandum dated November 6, 1971, executed by Carolyn A. Carruthers on behalf of the undertaker and

Billy J. Golston and his aunt, Gladys J. Martin on behalf of the family. The arrangements covered a funeral service for Mrs. Parker and included by item and price a casket, two-piece sectional concrete "vault box liner urn," and grave in Lincoln Cemetery, for a total price of $1,019.77. The memorandum also recited the availability of Social Security benefits and a John Hancock Insurance policy as credits with which to pay for the arrangements.

As part of the arrangements, Billy and Mrs. Martin were taken to Lincoln Cemetery to select a grave site. They chose a site, the cost of which was included in the memorandum.

On November 8, 1971, Jones ordered a two-piece box from Wilbert Vault Company for delivery to Lincoln Cemetery for placement at the direction of cemetery personnel for the burial of Mrs. Parker on November 10, 1971. Wilbert's records indicated that the box was delivered to Lincoln Cemetery and that it was placed in a grave as indicated by cemetery personnel November 10, 1971. Cemetery records indicated that three graves were opened November 10, 1971. Jones paid Wilbert for the box charged in the arrangements. Jones does not look into graves to check presence of burial vaults but depends upon the vault man to deliver them and the cemetery man to direct their placement. Graves are dug by cemetery employees.

A form, "Funeral Arrangements," prepared by Jones, showed that Mrs. Parker was survived by five brothers and two sisters in addition to her three children and sister Gladys.

On November 10, 1971, funeral services for Mrs. Parker were conducted at Jones's chapel and at the selected grave site. The grave was covered by a carpet of artificial turf and a lowering device. Upon completion of the service, the family members were returned by cars to the funeral chapel.

The insurance policy was payable to Billy J. Golston. Gladys Martin subsequently procured a part of the proceeds of the policy and used it to pay the balance remaining on the price of the funeral after application of the Social Security benefit.

Mrs. Martin also ordered a headstone with delivery delayed at least six weeks before placement on the new grave. On February 20, 1972, Mrs. Martin, accompanied by her nephew, deceased's son Nathaniel Golston, and her brother Dorsey Golston, went to Mrs. Parker's grave site to pay respects and to see if the headstone had been placed. She saw an open hole in the grave site, and could see her sister's body, particularly the left side of her face, with dirt on it. She could also see a hand from about the waist up. Subsequent investigation determined that the grave was, at its deepest depth, thirty-one inches. Heavy machinery driven over the grave had struck the top of the casket, thus exposing the body. There was evidence of erosion; there was no vault. Lawrence Jones conceded Mrs. Parker had not been buried in the box or vault ordered for her, and its location was never discovered.

Mrs. Martin was upset by her discovery and called the police who referred her to the sheriff's office. Deputy Kane visited the grave site and viewed the exposed body. Charles Golston, a brother of Mrs. Parker, was then present, and Mrs. Martin drove a sister who expressed disbelief to the grave site to see the exposed body. Mrs. Martin also called lawyers and the Channel 9 Action Reporter. A number of still and moving pictures were taken showing, among other things, the condition of the grave and persons present. The body was subsequently disinterred by Watkins Brothers Funeral Home and reburied in the original casket at Blue Ridge Cemetery.

Billy J. Golston was present for the funeral November 10, 1971; he was with the Air Force in Korea in February, 1972. Upon learning of the discovery, disinterment and reburial, he felt bad and took some time off from his duties. Nathaniel Golston was present on both occasions and the incidents in February, 1972, caused him to feel bad and upset. He has thought about them since. He stayed in the car at the reburial. Reatha Golston, a teenager, did not testify. She lived with Mrs. Martin

after her mother died, and Mrs. Martin stated that she, as herself, Billy, and Nathaniel, was up late at night and could not sleep as a result of these incidents.

The jury was directed on behalf of each of the plaintiffs by Instructions 3, 4, and 5, in form MAI 17.01 and 19.01 modified:

"Your verdict must be for plaintiff _____ and against defendant Lawrence Jones Mortuary if you believe:

"First, defendant Lawrence Jones Mortuary failed to see that Eva Jane Parker was buried in the two-piece vault, and

"Second, defendant Lawrence Jones Mortuary was thereby negligent, and

"Third, such negligence either directly caused damage to plaintiff _____ or combined with the acts of defendant Douglas Investment Company, d/b/a Lincoln Cemetery, to directly cause damage to plaintiff _____."

The jury was instructed as to actual damages by Instruction 11, in form MAI 4.01.

The jury was instructed as to punitive damages by Instruction No. 12, in form MAI 10.03 modified:

"If you find the issues in favor of plaintiff, and if you believe that the conduct of one or more of the defendants as submitted in Instruction Number __ showed complete indifference to or conscious disregard for the emotional well being of plaintiffs, you may assess punitive damages in addition to any damages assessed under Instruction Number __.

"If punitive damages are assessed against more than one defendant, the amounts assessed against such defendants may be the same or they may be different. The amount of punitive damages assessed against any defendant may be such sum as you believe will serve to punish that defendant and to deter him and others from like conduct."

Appellant Jones contends that it should have had a directed verdict, asserting that plaintiffs (Golston) failed to adduce evidence to support a claim against it for damages for mental anguish in absence of proof of wanton, willful or malicious acts by

Jones; that the submission, Instructions 3, 4, and 5, was erroneous in permitting the jury to award compensatory damages for mental suffering with physical injury even if defendant's actions were negligent, and that the submission of punitive damages, Instruction 12, was erroneous in absence of proof of wanton, willful or malicious acts or "conscious disregard for the safety" of plaintiffs.

Appellant argues that its failure to see that Mrs. Parker was buried in the two-piece vault was "at its best * * * only negligence"; and that the general Missouri law is that in the absence of malice, bad motive, or willful or wanton conduct, mental anguish, unaccompanied by physical injury, is not compensable.

Early Missouri cases established the rule "that, in the absence of evidence of an unlawful invasion of one's rights under circumstances of malice, wilfulness, wantonness, or inhumanity, there is no recovery for fright, terror, anxiety, mental distress, or nervousness, unless these are accompanied by some physical injury." *Gambill v. White*, 303 S.W.2d 41, 43 (Mo.1957). See also *Trigg v. St. Louis, K. C. & N. Ry. Co.*, 74 Mo. 147, 153 (1881); *McCardle v. George B. Peck Dry Goods Co.*, 271 Mo. 111, 195 S.W. 1034, 1036 (1917).

■ In the circumstances of this case, plaintiffs' mental anguish was a natural and probable result of defendant's failure to see that their mother was buried in the vault, which, as part of complete funeral services, they had purchased from defendant. "While damages for mental anguish are ordinarily not recoverable unless connected with some physical injury, the trend of modern authority is not to apply such restriction in the case of interference with rights involving dead human bodies, where mental anguish to the surviving relatives is not only the natural and probable consequence of the character of wrong committed, but indeed is frequently the only injurious consequence to follow from it." *Crenshaw v. O'Connell*, 235 Mo.App. 1085, 150 S.W.2d 489, 493 (1941). See *Wilson v. St. Louis & S. F. R. Co.*, 160 Mo.App. 649, 142

S.W. 775 (1912), where a widower recovered damages for mental anguish from a common carrier on account of damage to a box containing the body of his wife, and the court recognized, l.c. 779, "that the rule requiring bodily injury, in order to warrant a recovery for mental suffering in cases of negligence, has no application to wanton or intentional wrong, or where the mental distress was incident to or a natural consequence of some actionable wrong"; *Patrick v. Employers Mut. Liability Ins. Co.*, 233 Mo.App. 251, 118 S.W.2d 116, l.c. 122 (1938), where the court recognized, "The damages recoverable in such a case are not for the injury done to the dead body, but are for the wrong or trespass on the * * * right to the undisturbed possession and control of the body, measured by the mental anguish and suffering of the plaintiff occasioned thereby"; and *Koerber v. Patek*, 123 Wis. 453, 102 N.W. 40, 43 (1905), where the court could "imagine no clearer or dearer right in the gamut of civil liberty and security than to bury our dead in peace and unobstructed; none more sacred to the individual, nor more important of preservation and protection from the point of view of public welfare and decency; certainly none where the law need less hesitate to impose upon a willful violator responsibility for the uttermost consequences of his act." See also *Wall v. St. Louis & S. F. R. Co.*, 184 Mo.App. 127, 168 S.W. 257 (1914).

In addition to the negligence attributed to defendant, plaintiffs also submitted that such conduct showed complete indifference to or conscious disregard for their emotional well being. See *Sharp v. Robberson*, 495 S.W.2d 394, 397 (Mo. banc 1973), where "an act or omission, though properly characterized as negligent, may manifest such reckless indifference to the rights of others that the law will imply that an injury resulting from it was intentionally inflicted. * * * Or, there may be conscious negligence tantamount to intentional wrongdoing, as where the person doing the act or failing to act must be conscious of his conduct, and, though having no specific intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury. * * * In either case punitive damages are allowable for resulting injury"; and *Pretsky v. Southwestern Bell Telephone Co.*, 396 S.W.2d 566, 568 (Mo.1965), citing 64 A.L.R.2d 100, that "the attitude toward recovery for emotional distress has tended to become somewhat more liberal," and its acceptance of 1 Restatement of Torts 2d, § 46, p. 71, that a right of action exists for damages for severe emotional distress, intentionally and recklessly caused, by "extreme and outrageous conduct." See also *Nelson v. Grice*, 411 S.W.2d 117 (Mo.1967); *Warrem v. Parrish*, 436 S.W.2d 670 (Mo.1969); *Hood v. Naeter Bros. Pub. Co.*, 562 S.W.2d 770 (Mo.App.1978); *Kuehner v. Denny Loan Corp.*, 518 S.W.2d 94 (Mo.App.1974).

■ Generally, the case [of extreme and outrageous conduct causing severe emotional distress] is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, " 'Outrageous!' " Restatement, supra, l.c. 73. See *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976), where plaintiff's petition was against a mortician for damages for mental distress allegedly suffered as a result of the reckless manner in which the mortician dealt with the body of plaintiff's deceased father and conducted burial services. The court applied the provision in 2 Restatement of Torts 2d, § 500, p. 587; "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." As applied to the type of action here concerned, "the above standard would refer to an unreasonable risk of severe emotional distress rather than only to physical harm." *Meyer v. Nottger*, supra, 241 N.W.2d l.c. 919.

Appellant Jones complains that use in Instruction 12 of indifference to or conscious disregard "for the emotional well being of plaintiffs" is an improper deviation from MAI.

■ The language of MAI 10.03, indifference to or conscious disregard "for the safety of others," does not fit plaintiffs' case. The Committee's Comment to the MAI 10.-00 series cites *Nichols v. Bresnahan*, 357 Mo. 1126, 212 S.W.2d 570, 575 (1948), which approved an instruction requiring a finding that defendant's conduct exhibited "a disregard or conscious indifference to the consequences." Appellant would require this pre-MAI language to the exclusion of other permissible modifications of MAI 10.03 to fit plaintiffs' case. The Committee's suggestion, albeit satisfactory for this case, says no more or less than the modification employed; and it too has the sanction of case law in these circumstances. *Meyer v. Nottger*, supra.

■ Appellant Jones complains particularly of the submission, Instructions 4 and 12, concerning Reatha Golston, "in that said plaintiff in failing to testify at trial failed to prove she sustained any damages on her part."

It is reasonable to believe under the evidence in this case that all three children sustained and shared similar bad experiences in the knowledge, however acquired, that their mother had been improperly buried. Counsel for Jones so conceded in closing argument. True, Reatha did not testify, but her brothers described their feelings and her aunt stated that all of the family was upset, up late at night, and could not sleep. Cf. *Tapia v. Zarb*, 70 S.W.2d 464 (Tex.Civ.App.1934), where the trial court ruled a widow failed to make a submissible case on evidence by a third party that the widow "looked sick" which was explained to mean "she looked to him grieved."

■ Instruction 2 contained the language, "The burden is upon plaintiffs to cause you to believe the propositions necessary to support their claim against defendants." Appellant Jones argues this was prejudicially misleading, asserting that "claims" should have been used to reflect multiple plaintiffs asserting separate claims in one trial.

This asserted error, if so, was rendered harmless by the totality of instructions given, particularly the separate verdict-directing instructions and forms of verdict for each plaintiff's damages. *Penn v. Columbia Asphalt Co.*, 513 S.W.2d 679 (Mo.App.1974). The total charge was not confusing or misleading; the jury followed such instructions and forms and rendered separate awards for each plaintiff.

■ Appellant Jones charges the hypothesis "failed to see that Eva Jane Parker was buried in the two-piece vault" in Instructions 3, 4, and 5, was vague and unintelligible without further definition or detail.

Rule 70.01(a) requires that "all instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Compliance with respect to Instructions 3, 4, and 5 is demonstrated by another quotation from Jones's counsel in closing argument: "All Judge Meyers is telling you, the only claim that plaintiffs have against Lawrence Jones is that he failed to see this Eva Jane Parker was buried in this two-piece vault."

■ Instruction 11 on damages authorized an award to plaintiffs for any damages "sustained as a direct result of the occurrences mentioned in the evidence." Appellant Jones charges the use of "occurrences" violated the directions on use of MAI 4.01, that "occurrence" should be used unless the injury was caused by more than one occurrence. *Gant v. Scott*, 419 S.W.2d 262 (Mo. App.1967).

"Occurrences" was proper in this case. The case went to the jury against defendant Jones, Instructions 3, 4, and 5, on the hypothesis "failed to see that Eva Jane Parker was buried in the two-piece vault," and against defendant Douglas Investment Company, Instructions 6, 7 and 8, on the hypothesis in Instructions 3, 4, and 5, and

the additional hypothesis "or buried Eva Jane Parker in an unreasonably shallow grave." Instructions 3 through 8 also authorized the jury to find for each plaintiff if the jury believed that each defendant's negligence either directly caused or combined with the acts of the other defendant to cause damage. See *Homm v. Oakes*, 453 S.W.2d 679 (Mo.App.1970); *Jurgeson v. Romine*, 442 S.W.2d 176 (Mo.App.1969).

Appellant Jones charges that Instruction 14 with respect to the form for awarding actual damages was erroneous because it omitted the word "only."

Although "only" appears in MAI 36.12, the total direction in No. 14 on the forms for awarding damages, actual and punitive, taken from MAI 36.05, 36.08, and 36.12, demonstrates the absence of confusion or misdirection, viz.:

"You are instructed that a separate verdict must be returned with respect to each plaintiff. You are further instructed that nine or more jurors may return a verdict for any party in this case. If all of you agree upon a verdict, your foreman alone will sign it, but if your verdict is returned by nine, or more, and less than twelve jurors, your verdict must be signed by all of the jurors who agree to it.

"If you find the issues in favor of plaintiff _____ and find that plaintiff _____ is entitled to actual damages [only] against both defendants, your verdict may be in the following form:

"'We, the jury, find the issues in favor of plaintiff _____ and against both defendants, and assess plaintiff['s] _____ damages at $_____ (stating the amount).'

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"If you find the issues in favor of plaintiff _____ and against one defendant only, you should name the defendant against whom you find and also the defendant in whose favor you find. In such case your verdict may be in the following form:

"'We, the jury, find the issues in favor of plaintiff _____ and against defendant _____ (here insert only the name of the defendant you find against) and we assess plaintiff['s] _____ damages at $_____ (stating the amount), and we further find the issues in favor of defendant _____ (here insert the name of the defendant in whose favor you find).'

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"If you find for plaintiff _____ and against one or more defendants and if you further find that plaintiff _____ is also entitled to punitive damages, then your award of punitive damages shall be in the following form:

"'We, the jury, find the issues in favor of plaintiff _____ and we find that plaintiff _____ is entitled to punitive damages against the following defendants in the following amounts:

| Name of Defendant | Amount of Punitive Damages Assessed |
|---|---|
| Name of Defendant | Amount of Punitive Damages Assessed' |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"YOU MAY NOT AWARD PUNITIVE DAMAGES AGAINST ANY DEFENDANT UNLESS YOU HAVE ALSO AWARDED ACTUAL DAMAGES AGAINST THAT SAME DEFENDANT.

"If you find the issues against plaintiff _____ and in favor of all defendants, then your verdict shall be in the following form:

"'We, the jury, find the issues in favor of all defendants and against plaintiff _____.'"

The jury was further instructed by No. 14 in the same manner with respect to plaintiffs Reatha and Billy Golston.

Appellant Jones contends the court permitted counsel "to incorrectly instruct the jury as to the law applicable to actual damages" by this argument: " * * * and again, you don't have to award the same amount of punitive damages. You just don't have to. You must award some actual damages. You have to award a dollar if nothing else. Our laws—it's a technicality; there's got to be some monetary award—

"MR. CONWAY [for defendant Jones]: If your Honor please, that is not a proper statement of the law, and instructions. I think that's misquoting. THE COURT: The jury understands it's counsel's argument.

"MR. MYERSON [for plaintiffs]: Monetary damages, actual damages doesn't just mean loss of money. It means if you get in a car accident and you are upset and pain and suffering, that's all actual damages. But in any event, you must award actual damages. You must award a sufficient amount of money to deter these defendants from doing this again and to stop other cemeteries and funeral homes from doing this again."

The foregoing demonstrates that defendant's objection interrupted plaintiffs' argument which, when completed without objection, comported with the law contained in Instruction 14: "YOU MAY NOT AWARD PUNITIVE DAMAGES AGAINST ANY DEFENDANT UNLESS YOU HAVE ALSO AWARDED ACTUAL DAMAGES AGAINST THAT SAME DEFENDANT."

Appellant Jones contends the court should have granted defendants a new trial for the reason that juror Foy failed to disclose a 1970 negligence suit in which he was plaintiff, even though the entire panel was specifically asked about such matters during voir dire.

Foy's posture as plaintiff in a damage suit in 1970 was presented by affidavits of counsel for defendants. The affidavits contain no facts indicative of prejudice and there was no evidence that Foy was guilty of intentional concealment of his prior status or that such prejudiced the verdict in this case. In such circumstances, the court's refusal to set aside the verdict was within the discretion accorded the trial court. *Beggs v. Universal C. I. T. Credit Corporation*, 387 S.W.2d 499 (Mo. banc 1965).

Exhibit 15 was a moving picture film of the exhumation of the casket of Eva Jane Parker. Appellant Jones claims its admission was erroneous for the reasons that it was not relevant, did not tend to prove any issue, depicted a scene not witnessed by all plaintiffs, and served only to inflame and prejudice the minds of the jurors.

Admission of evidence calls for an exercise of the trial court's discretion. None of appellants' charges demonstrate an abuse of that discretion. As a depiction of consequences of defendants' conduct, the film bore on the issue of damages, verified presence of witnesses, and corroborated descriptions of the grave site, its depth and location.

Appellant Jones contends it was error to submit the issue of punitive damages absent proof of net worth of defendants.

Net worth of a defendant is admissible on the issue of punitive damages, *State ex rel. Kubatzky v. Holt*, 483 S.W.2d 799 (Mo.App. 1972). As conceded by appellant, however, no case has been found which requires such a showing, and appellant Jones makes no suggestion that the $6,000 total punitive damages award against it was excessive.

The issue in Mrs. Martin's appeal is whether her petition states a cause of action against defendant Lawrence A. Jones Mortuary, Inc., d/b/a Lawrence A. Jones & Sons Funeral Chapel.

As against defendant Jones, Mrs. Martin pleaded: that she is the sister of Eva Jane Parker who died November 5, 1971; that on November 6, 1971, she, acting

with and on behalf of Mrs. Parker's family, made arrangements with Jones for the embalming, funeral services, and purchase of a casket and two-piece box; that on November 10, 1971, Mrs. Parker was buried in Lincoln Cemetery by Jones; that Jones, negligently and with complete indifference and conscious disregard for the emotional well-being of plaintiff, did not assure that the two-piece box was delivered to Lincoln Cemetery for placement in her sister's grave, and negligently and with complete indifference to and conscious disregard for the emotional well-being of plaintiff failed to assure that the deceased was buried in a grave of sufficient depth; that when plaintiff thereafter discovered the exposure, mutilation, and desecration of the remains of her sister, she was profoundly and severely outraged, shocked, and caused great and lasting mental distress, anguish, pain, and did suffer and became sick in mind; that defendant knew or could have known by exercise of reasonable care that deceased's body would be exposed and desecrated and that plaintiff would be outraged and injured as aforesaid; that as a result of the foregoing and the negligent and outrageous conduct of defendant, plaintiff sustained damages of $100,000; that in doing the things alleged, defendant acted so as to show a complete indifference and a conscious disregard for the emotional well-being of plaintiff, and by reason thereof, plaintiff asks exemplary and punitive damages of $500,000; that defendant Jones (and Douglas Investment Company) represented to plaintiff that her deceased would be properly buried in a casket, two-piece box, and grave of sufficient depth, all to protect deceased's body; that said representations were false, fraudulent, and malicious, and said defendants neglected to provide the two-piece box; that plaintiff was thereby damaged and asks actual damages of $100,000 and exemplary and punitive damages of $500,000 against defendants Jones and Douglas.

Neither defendants' motions to dismiss nor the court's order of dismissal contained a ground for the dismissal.

Plaintiff's petition pleads the same cause of action which afforded relief to her nephews, children of the deceased, affirmed supra, and states a cause of action for the reasons there stated under 1 Restatement of Torts 2d, § 46.

Respondent argues, however, that Mrs. Martin lacks standing to bring her action because she was not entitled to disposition of her sister's body. A sister of deceased was so limited with respect to suit for an unauthorized autopsy where the deceased was survived by her husband and mother in *Trammell v. City of New York*, 193 Misc. 356, 82 N.Y.S.2d 762 (N.Y.Sup.1948); *Gostkowski v. Roman Catholic Church*, 262 N.Y. 320, 186 N.E. 798 (1933), found it "inconceivable" that each member of a family could maintain a separate action for mental anguish resulting from desecration of a grave, and dismissed such cause as brought by an infant son of deceased where the husband had recovered in his separate action for such damages; and the reported cases involving interference with a dead body have been brought by the next of kin, e. g., *Wall v. St. Louis & S. F. R. Co.*, supra (son); *Patrick v. Employers Mutual*, supra (widow); *Wilson v. St. Louis & S. F. R. Co.*, supra (widower); *McClellan v. Highland Sales & Investment Co.*, 484 S.W.2d 239 (Mo.1972) (widow).

Such authorities are not persuasive in preclusion of Mrs. Martin's action under 1 Restatement 2d, § 46, pp. 71–72:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

"(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm * * * *."

In Restatement of Torts, § 868 (tentative draft 1970, p. 168), The American Law Institute "expresses no opinion as to whether there may not be situations in which members of the immediate family of the deceased who are not entitled to the disposition of the body may recover damages for emotional distress * * *. No case has been found allowing recovery as stated in the Caveat. There are cases in which more than one person has recovered, where there are multiple children of equal rank, but in all of them there would appear to have been equal right of disposition. The Reporters, Advisers and Council would like to leave it open. Suppose the widow, who in all states is the first person entitled to disposition, is unable to attend the funeral. When somebody dumps the corpse out of the coffin at the feet of the daughter, who is present. It makes little sense to say that the widow can recover for her mental distress when she hears about it, but the daughter has no cause of action." Prosser, The Law of Torts, §§ 41–43 (4th Ed. 1971), reasons that the tort of outrage is not based on any quasi property right as frequently permeates actions for violation of the right to disposition of a dead body, but lies, instead, in favor of those persons to whom the emotional distress was inflicted, subject only to the limitations of proximate cause and foreseeability.

Plaintiff's pleading shows not only that she was a sister of the deceased, but that she was also the member of the family who stepped forward to make and to assist deceased's minor children to make arrangements for the deceased sister's burial. As such she qualified as a member of the deceased's "immediate family" to join in or bring an action of the nature envisioned by 1 Restatement of Torts 2d, § 46. See the discussion of "immediate family" in *Fisher v. Hodge*, 162 Conn. 363, 294 A.2d 577, 579–580 (1972). See also *Blanchard v. Brawley*, 75 So.2d 891 (La.App.1954), where the mother and each of the brothers and sisters of the deceased were permitted to recover for mental anguish caused by mutilation of the corpse of the deceased.

Judgment in 29,016 affirmed; judgment of dismissal in 29,283 reversed and cause remanded.

PRITCHARD, J., concurs.

ROBERT R. WELBORN, Special Judge, concurs in part and dissents in part in separate opinion filed.

ROBERT R. WELBORN, Special Judge, Presiding, concurring in part and dissenting in part.

I concur in the opinion of Judge Higgins except insofar as it affirms the judgment for punitive damages against the appellant Jones. In my opinion, the act charged against the appellant, i. e., the failure "to see that Eva Jane Parker was buried in the two-piece vault * * *" did not amount to a showing of "complete indifference to or conscious disregard for the emotional well being [of plaintiffs] * * *." The conduct charged did, in my opinion, amount only to negligence, insufficient to justify an award of punitive damages. *Warner v. Southwestern Bell Telephone Company*, 428 S.W.2d 596, 603–604[15–19] (Mo.1968).