The defendant, Affiliated FM Insurance Company ("Affiliated"), appeals from a judgment based on a jury verdict in favor of the plaintiff, Stephens Enterprises ("Stephens"), on a two-count complaint alleging breach of contract and bad faith. The jury awarded compensatory damages of $200,000 on the breach of contract claim; that award has been paid and is not a subject of this appeal. Affiliated appeals only that portion of the judgment based on the jury's award of punitive damages in the amount of $250,000 on the bad faith claim. We affirm.
Stephens, an Alabama partnership, owns a building located in Ozark, Alabama. It purchased this building from the Industrial Development Board of Ozark. The Industrial Development Board transferred "all rights and remedies" to Stephens. Stephens leased the building to Wipo, Inc., a textile firm. Affiliated issued a policy of insurance on this building; the named insureds were Wipo, Inc., its subsidiary Sugar Creek Industries, Inc., and the Industrial Development Board. When Stephens bought the property, the assignment was recorded and Affiliated had notice of the assignment to Stephens. Stephens was listed on the insurer's certificate of insurance and binders as having a mortgage interest in the property.
A severe rainstorm on September 2, 1988, caused the roof of the building to collapse. The tenant gave Affiliated notice of the loss and Affiliated sent an adjuster to the scene the following morning. No notice was given to Stephens, the mortgage holder of record, despite the fact that as mortgagee Stephens's name should have been on the drafts issued to pay for the losses. Affiliated paid the tenant for claimed damages for contents and loss of business income while repairs were being made.
In the spring of 1991, Charles Stephens, one of the partners in Stephens, went to check out the building, because the tenant had stopped paying rent. He discovered that in 1988 there had been a loss, of which he had been unaware. He found that only partial repairs had been made to the building and that the building had significant leaks. He called the Affiliated claims adjuster, Linda Toole, to register his concern that he had not been notified of the damage to the building so that he could have been there to oversee the repairs. He asked her for copies of the drafts that had been issued by Affiliated on the loss. *Page 782 
After hearing from Charles Stephens concerning a claim, Affiliated's Linda Toole wrote to him, stating falsely that Charles Stephens had agreed that the partnership's security interest had not been breached. His claim was subsequently denied. The testimony reflects that on May 6, 1991, just weeks after Charles Stephens had telephoned the Affiliated home office in Atlanta, the insurance policy was cancelled because of "poor state of repairs." Stephens sued Affiliated on May 23, 1991, alleging breach of contract and bad faith failure to pay an insurance claim.
The case was tried on June 7, 1993. Affiliated's adjuster Linda Toole admitted that the policy itself showed that Stephens Enterprises had an interest in the property as the mortgagee. She testified that the purpose of naming the mortgagee on the drafts is so that the mortgagee can make sure that repairs are done correctly. Ms. Toole also admitted that she left Stephens's name off the drafts.
Stephens called Jack Mizell, an architect who owns a building near the Stephens building, as an expert witness. Mizell testified that, in his judgment, the roof had suffered a ripple or harmonic effect in the storm and needed to be replaced. He estimated that at the time of the storm loss the roof needed $175,000 worth of repair and that as of the trial date it would take $2 million to $2.5 million to repair the roof.
Stephens presented testimony that the building had been frequently inspected by representatives of Affiliated before the storm loss in 1988. Three months before the storm loss, a report by one of those representatives suggested repairs to the roof. These repairs were made. Less than two weeks before the loss, an engineer who inspected the building for Affiliated observed that the roof repairs had been completed. The engineer checked the box marked "No" next to a question asking whether Affiliated had any risk of exposure due to the roof.
The trial judge directed a verdict for Stephens on the breach of contract claim with regard to liability; the jury awarded $200,000 in compensatory damages on the contract claim and $250,000 in punitive damages on the bad faith claim that is the subject of this appeal. After the jury returned its verdict, Affiliated moved for a JNOV or, in the alternative, a new trial or a remittitur. The trial judge, the Honorable N. Daniel Rogers, Jr., denied the motions, stating:
 "This case came on for hearing on August 10, 1993, on defendant's Motion for Judgment Notwithstanding the Verdict, or In the Alternative, For a Motion for New Trial or, In the Alternative, for Remittitur. Oral argument was presented by counsel for both parties.
 "This case was tried before a jury beginning June 7, 1993. The evidence that was presented included an admission by the defendant's adjuster handling this claim that the payment of the claim had been improperly made by not including the plaintiff as mortgagee. The adjuster also admitted that the purpose for this requirement was to put the mortgagee on notice that there had been a loss so that he could assure himself that the repairs to the roof were done correctly and completely. The evidence was undisputed that the plaintiff had no notice of the loss and due to the failure of the insurer to comply with its policy provisions of including him on the loss payment he did not discover the loss until just before this suit was filed. In light of this evidence and by agreement of the defendant in open court, the Court granted a directed verdict to the plaintiff on the breach of contract count as to liability with the issue of damages to be resolved by the jury.
 "Plaintiff produced evidence through an expert witness, Jack Mizelle, that the roof damage made the subject of this claim had been inadequately and improperly repaired. Mr. Mizelle testified that the repairs, if properly done at the time of the claim, would have cost approximately $175,000.00. The amount actually paid by the defendant was around $60,000.00. Mr. Mizelle testified that the inadequate repairs had led to additional damage over the next four years that would have require[d] between $2 million to $2.5 million to repair. The jury awarded $200,000.00 in compensatory damages and this Court *Page 783 
finds that this verdict was supported by the evidence presented.
 "The plaintiff presented evidence at trial that the risk analysis and loss prevention reports made by the defendant all showed the roof of the insured premises was in good condition prior to this storm loss. After learning of the plaintiff's claim that the loss had been inadequately repaired, the insurer hired an independent adjuster and roofing consultant to evaluate the roof. These witnesses testified at trial that the roof had been in horrible shape for many years before the loss. They were not shown the insurer's file showing otherwise and had no firsthand knowledge upon which to base these opinions. The failure to fully disclose the known and evaluated loss prevention reports by the insurer certainly provided a legitimate inference that this matter was handled and investigated in bad faith. Moreover, there were other facts brought out during the examination of the defense witnesses that indicated an attempt by the defendant to build a defense on a less than satisfactory and fair evaluation of the claim. Therefore, the Court concluded that a prima facie showing of bad faith had been made by the plaintiff and the case was submitted to the jury on that issue. The Court found that the plaintiff was entitled to a directed verdict on the contract claim and that there was substantial evidence of bad faith to support that issue going to the jury. (See, Thomas v. Principal Financial Group, 566 So.2d 735
(Ala. 1990).)
 "The jury found in favor of the plaintiff and in addition to the $200,000.00 compensatory damages, awarded $250,000.00 in punitive damages. The Court finds that this verdict was not based upon sympathy, prejudice, bias or other improper motive and was supported by the evidence presented at trial. Pursuant to the examination directed by the Alabama Supreme Court in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1988), the Court further finds that there was a reasonable relationship between the harm caused by defendants' conduct and the punitive damages award. The Court further finds that there was evidence which if believed by the jury could establish an attempt by the insurer to cover-up its prior evaluation of this building and a failure to disclose this to its consultants. This conduct was of such a degree of reprehensibility that would justify such an award. Moreover, had this conduct been successful it would have resulted in a significant monetary saving or profit to the defendant. In short, the evidence supported the verdict rendered by the jury.
 "Therefore, the Court finds that the motions filed by defendant for J.N.O.V., or, in the alternative for a New Trial, or, in the alternative a remittitur, are not well taken and are due to be and hereby are OVERRULED. It is so ordered.
"Done this 12 day of August 1993.
"/s/ N. Daniel Rogers, Jr.
"Circuit Judge"
Affiliated argues that the trial court erred in denying it a directed verdict and in denying it a JNOV on Stephens's claim of bad faith. The elements of a bad faith claim were set out by this Court in National Sec. Fire Cas. Co. v. Bowen,417 So.2d 179 (Ala. 1982). In Bowen, we stated:
 "[T]he plaintiff in a 'bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment without any reasonable ground for dispute. Or, stated differently *Page 784 
the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim."
Id. at 183. See King v. National Foundation Life Ins. Co.,541 So.2d 502 (Ala. 1989); Pierce v. Combined Ins. Co. of America,531 So.2d 654 (Ala. 1988); Coleman v. Gulf Life Ins. Co.,514 So.2d 944 (Ala. 1987); Blue Cross Blue Shield of Alabama v.Granger, 461 So.2d 1320 (Ala. 1984).
We have carefully reviewed the record in this case and conclude that Stephens met its burden in proving a bad faith claim: (a) the claims adjuster admitted the contract, and there was a directed verdict on the breach of contract claim; (b) there was an intentional refusal to pay the insured's claim; (c) there was an absence of any arguable reason for the refusal; (d) one could conclude that the insurer had actual knowledge of the absence of any legitimate or arguable reason, inasmuch as the evidence reflects that the company concealed from its own investigators information showing that during the year preceding this loss the roof had been inspected three times and each time had been said to be in good condition; and (e) there was evidence from which the jury could conclude that Affiliated attempted to manufacture a defense through the creation of a cover-up that would give a legal basis of a reason for denying coverage based upon "poor maintenance." Thus, Stephens presented evidence indicating that Affiliated had no legal or factual defense to the insurance claim.
Affiliated also contends that the trial court abused its discretion by denying Affiliated's motion for a mistrial based upon the trial court's questioning of Stephens's expert witness. However, the record reflects that the trial judge asked several questions in an attempt to determine whether the expert witness's answers were to be based upon personal knowledge or upon hearsay. The trial judge gave the jury a curative instruction explaining that he had asked questions of the expert witness to move the case along; and he said, "[I]f there is anything which has occurred, in any way in this case, whether it's the way I asked a question, or not, that leads you to believe that I have any feelings one way or the other, I do not." We find no error here.
Affiliated also contends that the jury award of $250,000 in punitive damages is excessive. The trial judge denied a remittitur, finding that there was evidence of bad faith and an attempted "cover-up." We find no error. Green Oil Co. v.Hornsby, 539 So.2d 218, 223 (Ala. 1989). There was substantial evidence from which the jury could find that Affiliated attempted to create a false reason to deny the claim based upon "poor maintenance" and from that attempt it could infer a pattern of bad faith.
Finally, Affiliated argues that an award of punitive damages in this case violates its rights under the Constitution of the State of Alabama and the Constitution of the United States, because the remedy provided Stephens — punitive damages for bad faith — applies only to insurance contracts. This Court has explained that the nature of an insurance contract is such that an insurance company has an obligation of good faith and fair dealing. The recognition of the tort of bad faith does not, as Affiliated asserts, give a unilateral right to plaintiffs to pursue a claim for punitive damages against an insurer for an alleged breach of contract. The burden of proof in a bad faith case is such that sufficient protection is afforded to defendants in these cases. See: Gulf Atlantic LifeIns. Co. v. Barnes, 405 So.2d 916 (Ala. 1981); Thomas v.Principal Financial Group, 566 So.2d 735 (Ala. 1990); StandardPlan, Inc. v. Tucker, 582 So.2d 1024 (Ala. 1991).
For the reasons stated above, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, STEAGALL and INGRAM, JJ., concur. *Page 785