822 So.2d 1149 (2001)
SHELTER MUTUAL INSURANCE COMPANY
v.
Carolin M. BARTON.
1991157.
Supreme Court of Alabama.
September 7, 2001.
Rehearing Denied December 14, 2001.
*1151 Nickolas J. Steles of Ashe, Tanner & Wright, P.C., Tuscumbia, for appellant.
Jonathan B. Lowe of Lowe, Mobley & Lowe, Haleyville, for appellee.
PER CURIAM.
This is an appeal from the denial of a motion for a judgment as a matter of law following a jury's award of damages in a breach-of-contract and bad-faith action against an insurer providing uninsured motorist coverage. We reverse and remand.

Facts and Procedural History
On November 30, 1996, Carolin M. Barton, her husband, and her daughter were passengers in a vehicle owned and operated by Bobby Dale Walters. As Walters's vehicle was leaving Regency Square Mall in Florence, Walters pulled into the path *1152 of, and was struck by, a vehicle driven by Shannon Derek Vaden. Barton was injured in the accident.
Testimony at trial indicated that, just before the accident, Walters had stopped his vehicle at a stop sign located at the southern end of the mall and was preparing to make a left turn onto Hough Road, a four-lane road running east and west along the southern boundary of the mall. Walters testified that as he was stopped at the stop sign, he noticed several cars in the right westbound lane of Hough Road that appeared to be turning into the mall. Walters stated that he did not see any cars in the left westbound lane. Walters said that after he looked to the left, to the right, and then back to his left, he proceeded into the intersection. As Walters began to cross the westbound lanes of Hough Road, Vaden, who was driving in the left westbound lane of Hough Road, struck Walters's vehicle.
At the time of the accident, Vaden was uninsured. Walters's vehicle was insured by Shelter Mutual Insurance Company ("Shelter"). Because Walters was a resident of Missouri and his vehicle was principally garaged in that state, Shelter had issued Walters's policy in Missouri. The policy provided liability coverage with applicable limits of $50,000 per person/$100,000 per occurrence, as well as uninsured motorist benefits of $25,000 per person/$50,000 per occurrence. The policy had a limit of $2,000 for medical expenses. When Walters reported the accident to Shelter, the claim was assigned to senior claims representative Warren Medley. When Medley adjusted the claims arising from the accident, he was unaware of the Alabama Guest Statute, § 32-1-2, Ala. Code 1975. The Alabama Guest Statute bars a passenger from suing a driver for injuries sustained in an accident, unless the accident is caused by the driver's willful or wanton misconduct. Applying Missouri law, Medley adjusted the claims of Barton, her daughter Angela Batchelor, and Vaden as potential personal-injury claims against Walters.
As part of his investigation, Medley obtained recorded statements from Walters and Barton. Medley also spoke with Batchelor and reviewed the police report and photographs of Walters's vehicle. The police report indicated that witnesses told the investigating officer that Vaden's vehicle had moved from the right lane to the left westbound lane of Hough Road just before the accident.
On December 17, 1996, Medley prepared a "Special Auto Report" that summarized his investigation and his conclusions regarding the accident. The report indicated that Walters had contributed to cause the accident. Additionally, Medley wrote that Vaden may have also contributed to cause the accident; Medley based this conclusion on Barton's statement to him that Vaden appeared to have been speeding just before the accident.[1] Medley did not estimate the potential liability, i.e., set a reserve, for the uninsured-motorist benefits under the policy, although he knew that Vaden was uninsured at the time of the accident. At trial, Medley stated that he would have set a reserve for the uninsured-motorist coverage if he had determined that Vaden was negligent and that that negligence had, in fact, contributed to cause the accident.
Medley paid Batchelor $1,500 on March 4, 1997, in settlement of her personal-injury claim. The notes in Medley's claims file *1153 reflect that as of March 4, 1997, both Barton's and Vaden's personal-injury claims were still outstanding. Medley received a letter from Barton's attorney on May 14, 1997, notifying him that Barton had retained counsel. On June 16, 1997, Barton's attorney faxed Medley a letter, stating that Shelter had denied payment of the medical expenses claimed by Barton and demanding payment of those expenses under the policy. The letter made no demand for uninsured-motorist benefits. On June 17, 1997, Medley settled Vaden's medical claim under the policy for $50,000.
On June 20, 1997, Barton sued Vaden and Shelter[2] in the Marion Circuit Court. Barton's complaint alleged that Vaden's negligence had caused the accident[3] and that because Vaden was uninsured at the time of the accident, Barton was entitled to uninsured-motorist benefits under Walters's Shelter policy. The complaint also alleged that Barton was a third-party beneficiary of the insurance contract between Shelter and Walters, and that Shelter's refusal to pay the medical-expense coverage available under the policy was a breach of that contract. Based on the alleged breach of contract, Barton also claimed that Shelter had acted in bad faith by refusing to pay the medical-expense coverage available under the policy. Barton's complaint also alleged that Shelter had committed the tort of outrage by refusing to pay the medical-expense coverage under the policy. Before trial, Barton voluntarily dismissed the bad-faith claim regarding Shelter's failure to pay the medical-expense benefits under the policy and the claim alleging the tort of outrage. Medley, still unaware of Alabama's Guest Statute, was planning to offer Barton the remaining policy limits of $48,500 in settlement of her personal-injury claim.
On September 4, 1998, this Court released its opinion in Hogan v. State Farm, 730 So.2d 1157 (Ala.1998) (overruled on other grounds, Williamson v. Indianapolis Life Ins. Co., 741 So.2d 1057 (Ala. 1999)), which held that when the Alabama Guest Statute bars a passenger's claim against an insured driver, the passenger may still recover uninsured-motorist benefits from his own insurer.[4] After our opinion in Hogan was released, Barton amended her complaint to allege that Walters's negligence had caused, or contributed to, the accident and that Barton was due uninsured-motorist benefits under the Shelter policy as a result of Walters's negligence. Barton recast her bad-faith claim to allege that Shelter had acted in bad faith by refusing to pay uninsured-motorist benefits, because, she argues, her injuries were the result of Walters's negligence and/or Vaden's negligence.
On October 11, 1999, Shelter moved for a summary judgment on all remaining claims. The trial court denied Shelter's motion and the case proceeded to trial. At the close of the evidence, Shelter moved for a judgment as a matter of law ("JML"). The trial court denied that motion *1154 and submitted Barton's breach-of-contract and bad-faith claims to the jury. On November 18, 1999, the jury returned a verdict in favor of Barton, awarding her $250,000 on her breach-of-contract claim, $250,000 in compensatory damages on her bad-faith claim, and $200,000 in punitive damages. The trial court entered a judgment on that verdict.
On December 7, 1999, Shelter renewed its motion for a JML, or, in the alternative, moved for a new trial. The trial court denied that motion; this appeal followed.

Analysis
This appeal arises from the trial court's denial of a JML; therefore, we apply the same standard the trial court used initially in granting or denying the motion. Employees' Benefit Assoc. v. Grissett, 732 So.2d 968, 974 (Ala.1998). "In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling." Id. at 975 (citation omitted).
Although Shelter's briefs raise 20 issues on appeal, we note that this appeal presents 3 primary issues: (1) whether the trial court erred in submitting Barton's bad-faith claim to the jury; (2) whether the trial court erred in submitting to the jury Barton's claim for damages based on mental anguish arising out of her breach-of-contract claim; and (3) whether the trial court erred in denying Shelter's motion for a new trial on the ground that the award of $250,000 for mental anguish was against the great weight of the evidence.

I. Bad-Faith and Breach-of-Contract Claims
We first recognized the tort of intentional bad faith in insurance actions in Chavers v. National Sec. Fire & Cas. Co., 405 So.2d 1 (Ala.1981). "[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either `(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.'" Chavers, 405 So.2d at 7, quoting Vincent v. Blue Cross-Blue Shield of Alabama, Inc., 373 So.2d 1054, 1067 (Enbry, J., dissenting).
The plaintiff asserting a badfaith claim bears a heavy burden. Le-Fevre v. Westberry, 590 So.2d 154, 159 (Ala.1991). To establish a prima facie case of bad-faith refusal to pay an insurance claim, a "plaintiff must show that the insurer's decision not to pay was without any ground for dispute"; in other words, the plaintiff must demonstrate that the insurer had no legal or factual defense to the claim. LeFevre, 590 So.2d at 159. "`[T]he insured must eliminate any arguable reason propounded by the insurer for refusing to pay the claim.'" LeFevre, 590 So.2d at 159 (quoting Burns v. Motors Ins. Corp., 530 So.2d 824, 827 (Ala.Civ.App.1987)). "[A] finding of bad faith based upon rejection of an insurer's legal argument should be reserved for extreme cases. The right of an insurer to deny a claim on any arguable legal issue is to be as zealously guarded as is its right to decline benefits on any debatable issue of fact, the test of reasonableness being the same." Safeco Ins. Co. of America v. Sims, 435 So.2d 1219, 1226 (Ala.1983) (Jones, J., concurring specially).
Our cases have distinguished between a "normal" bad-faith claim and an "abnormal" bad-faith claim. In a "normal" bad-faith claim, the factual dispute centers around the reasonable, but conflicting, inferences that may be drawn from the evidence. *1155 Safeco Ins. Co. of America v. Sims, 435 So.2d at 1225 (Jones, J., concurring specially). For a "normal" bad-faith claim to be submitted to the jury, the underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law. National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala.1982). If a fact issue exists, making a judgment as a matter of law on the contract claim inappropriate, then the bad-faith claim fails and should not be submitted to the jury. Id., 419 So.2d at 1362.
Because the factual dispute here centered around whether the uninsured motorist, Vaden, or the insured motorist, Walters, was negligent, Barton's claim was a "normal" bad-faith claim. Thus, for Barton's bad-faith claim to be submitted to the jury, she must be entitled to a preverdict judgment as a matter of law on her underlying contract claim.
Regarding the strength of the breach-of-contract claim, Shelter argues that the trial court erred by applying Alabama law when it construed the parties' rights and liabilities under the contract.[5] Specifically, Shelter argues that the trial court should have applied Missouri law because the insurance policy was purchased by Walters, who is a Missouri resident; the policy insured a vehicle that was principally garaged in the state of Missouri; and the policy was delivered in the state of Missouri.[6]
In Cotton v. State Farm Mutual Automobile Insurance Co., 540 So.2d 1387 (Ala. 1989), we affirmed a trial court's judgment applying Tennessee law when it construed the uninsured-/uninsured-motorist benefits of a State Farm policy insuring a vehicle that was principally garaged in Alabama. Because the policy was issued and delivered in Tennessee and because the insured had never informed State Farm that his vehicle was principally garaged in Alabama, we held that the policy must be construed according to Tennessee law. Cotton, 540 So.2d at 1388.
In this case, the facts that support applying Missouri law are even more compelling than those presented in Cotton. In addition to the fact that the Shelter policy was purchased and delivered in Missouri by a Missouri resident, the insured vehicle was principally garaged in Missouri. Therefore, the trial court erred by not applying Missouri law when it construed the Shelter policy.
Regarding the Shelter policy, we initially note that the section of the Shelter policy addressing uninsured-motorist coverage states that Shelter "will pay damages for bodily injury sustained by an insured which such insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle." (Emphasis in original.)[7] Under Missouri law, to recover *1156 uninsured-motorist benefits, Barton has the burden of proving (1) that the person who caused her injuries was uninsured, (2) that the uninsured person was legally liable to her, and (3) the amount of damages. Byrn v. American Universal Ins. Co., 548 S.W.2d 186, 187 (Mo.Ct.App.1977)(citing Hill v. Seaboard Fire & Marine Ins. Co., 374 S.W.2d 606, 609 (Mo.Ct.App.1963)).
Barton alleges that Shelter breached the contract to which she was a third-party beneficiary, because, she argues, (1) Vaden's negligence proximately caused the accident and/or (2) Walters's negligence caused the accident.
The evidence appears undisputed that Vaden was, in fact, uninsured on the date of the accident. However, to recover for breach of contract based on the uninsured-motorist provision, Barton was also required to prove that Vaden was legally liable for the injuries she suffered. The documents received and reviewed by Shelter's claim representative, Medley, indicated that Vaden was traveling in the right westbound lane of Hough Road and that he moved into the left westbound lane just before the accident. Although Barton and Walters testified that Vaden appeared to be traveling at an excessive rate of speed just before the accident, Walters also testified that he saw oncoming traffic in the right westbound lane, but believed that all of those vehicles were turning right at the intersection at which his vehicle was stopped. It is undisputed that the accident occurred while Walters was attempting to make a left turn onto Hough Road and that the vehicles collided in Vaden's lane of traffic. Finally, Medley testified that he believed Walters was solely liable for the accident. These facts are sufficient to present as a triable issue the question whether Vaden's negligence caused Barton to be legally entitled to recover under the uninsured-motorist provision of the contract, thereby defeating Barton's attempt to present a triable issue on the bad-faith claim.
Likewise, Barton did not eliminate any legal or factual defense to her claim for uninsured-motorist benefits based on Walters's negligence. We recognize that were we to apply Alabama law, the Alabama Guest Statute, § 32-1-2, Ala.Code 1975, would preclude any direct action by Barton against Walters for any negligence on his part in causing her injuries.[8] However, we are constrained to interpret the policy in accordance with Missouri law.
Although Missouri has no guest statute, its courts have applied the guest statute of another state in an uninsured-motorist case that was factually similar to the case before us. In Byrn v. American Universal Ins. Co., 548 S.W.2d 186 (Mo.Ct.App. 1977), Byrn's personal representatives sued her uninsured-motorist carrier for money damages for injuries arising from an automobile accident that occurred in Iowa. The driver of the vehicle in which Byrn was a passenger had no liability insurance. Unlike Missouri, Iowa had a guest statute. Iowa's guest statute provided that "an owner or operator of a car [would] not be liable for damage[ ] to a guest unless ... such damage was caused as a result of the reckless operation by him of such motor vehicle." Byrn, 548 S.W.2d at 187 (citing § 321.494 Iowa Code, 1975). *1157 The Missouri Court used the "most significant relationship" test outlined in § 145 of Restatement (Second) Conflict of Laws to determine whether the Iowa guest statute or Missouri tort law should apply. The factors the Missouri court considered were:
"`(a) the place where the injury occurred,
"`(b) the place where the conduct causing the injury occurred,
"`(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
"`(d) the place where the relationship, if any, between the parties is centered.'"
Byrn, 548 S.W.2d at 189, quoting § 145, Restatement (Second) Conflict of Laws (1971). Although Byrn was a resident of Missouri, the Missouri court held that the Iowa guest statute should apply because the driver resided in Iowa, the uninsured vehicle was registered in Iowa, the guesthost relationship was created in Iowa, and the accident occurred in Iowa. Accordingly, the Missouri court determined that Byrn's representatives were not "legally entitled to recover" damages under her uninsured-motorist policy.
Applying those same principles, we conclude that the Alabama guest statute should apply in this case. Although Walters was a Missouri resident and his vehicle was registered in Missouri, the guesthost relationship was created in Alabama and the accident occurred in Alabama. Thus, we will apply the Alabama Guest Statute, § 32-1-2, Ala.Code 1975, and applicable Alabama caselaw construing that statute.
Barton argues that she is an uninsured motorist pursuant to our holding in Hogan v. State Farm Mutual Automobile Insurance Co., 730 So.2d 1157 (Ala.1998) (overruled on other grounds, Williamson v. Indianapolis Life Ins. Co., 741 So.2d 1057 (Ala.1999)). In Hogan, we read the provisions of the Alabama Guest Statute, § 32-1-2, Ala.Code 1975, in conjunction with the Uninsured Motorist Statute, § 32-7-23, Ala.Code 1975, and determined that a passenger who is precluded from recovery by the Alabama Guest Statute may nevertheless be "legally entitled to recover damages" from her own uninsured-motorist carrier. Hogan, 730 So.2d at 1159. However, we did not hold in Hogan that a passenger may be "legally entitled to recover damages" under the uninsured-motorist provision of the driver's policy of insurance. Barton was not an "uninsured" under the Shelter policy, and our holding in Hogan, supra, does not make her one. Our holding in Hogan does nothing more than entitle Barton to recover under the uninsured-motorist provision of her own policy. To allow Barton to recover under a policy that Walters, the driver, had purchased and paid for would be to controvert the purpose and tenor of the Alabama Guest Statute. Thus, the only way Barton could recover uninsured-motorist benefits under the Shelter policy would be for her to step into Walters's shoes and establish that he was legally entitled to recover.
To establish that Barton was legally entitled to recover uninsured-motorist benefits under the policy, she must prove that Vaden's negligence proximately caused the accident. The jury rendered the following verdict:
"We, the jury, find for the plaintiff Barton and against the defendant Shelter Mutual on the uninsured motorist claim and assess plaintiff's damages at $250,000.00, having found negligence by both Vaden and Walters."
The verdict form gave the jury the option of finding negligence on the part of Vaden or Walters, or both. Because the jury determined that both men were negligent, *1158 Alabama's contributory negligence laws prevent Walters from being "legally entitled to recover" under the uninsured-motorist provisions of the Shelter policy. Although the jury found Walters negligent in his operation of the vehicle, Walters's negligence is not imputed to Barton. See Adams v. Coffee County, 596 So.2d 892, 895 (Ala.1992)(to impute the negligence of the driver of an automobile to a passenger, the passenger must have had some authority or control over the car's movement). Because a factual issue remained as to which driver proximately caused Barton's injuries, the trial court properly submitted her breach-of-contract claim to the jury. Accordingly, because Barton was not entitled to a judgment as a matter of law on her breach-of-contract claim, the trial court erred by submitting Barton's badfaith claim to a jury.

II. Mental-Anguish Damages
Shelter also contends that the trial court erred in charging the jury on Alabama law regarding damages for breach-of-contract; it argues that the trial court should have instructed as to Missouri contract law.[9] "The substantive rights of the parties under the contract are controlled by the law of the State ... where the contract was executed." New Hampshire Fire Ins. Co. v. Curtis, 264 Ala. 137, 142, 85 So.2d 441, 446 (1955).[10] Because we have held that the Shelter policy must be construed in accordance with Missouri law, we likewise hold that Missouri law must be applied when considering the damages that resulted from a breach of that contract.
Under Missouri law, the damages recoverable in a breach-of-contract action are "those naturally resulting from the breach and which were within the reasonable contemplation of the parties at the time the contract for insurance was executed." Brion v. Vigilant Ins. Co., 651 S.W.2d 183, 184-85 (Mo.Ct.App.1983). Our research reveals two limited circumstances under which the Missouri courts have allowed the recovery of mental-anguish damages arising from a breach of contract. In Golston v. Lincoln Cemetery, Inc., 573 S.W.2d 700 (Mo.Ct.App.1978), the court allowed surviving family members to recover damages for mental anguish following the negligent burial of their relative, reasoning that "`in the case of interference with rights involving dead human bodies, ... mental anguish to the surviving relatives is not only the natural and probable consequence of the character of wrong committed, but indeed is frequently the only injurious consequence to follow from [the breach of the contract].'" Golston, 573 S.W.2d at 704 (quoting Crenshaw v. O'Connell, 235 Mo. App. 1085, 150 S.W.2d 489, 493 (1941)). In Brion v. Vigilant Ins. Co., supra, a physician sued his medical-malpractice insurer and claimed damages for mental anguish after the insurer, without the physician's consent and contrary to the express provisions of the insurance contract, settled a *1159 professional negligence action that had been filed against the physician. 651 S.W.2d at 184-85. The Missouri court reasoned that the physician had stated a claim for mental-anguish damages because the contract gave the physician control over litigation that could jeopardize his professional reputation. Id. Such control, the court stated, "is a valuable right," and the breach of a contract protecting that right "may, therefore, give rise to damages not generally recoverable in a conventional breach of contract action." 651 S.W.2d at 185.
Because mental anguish was not a "natural and probable consequence" of the alleged breach of the Shelter policy, because the policy did not concern interference with rights involving dead human bodies, and because the policy did not expressly concern a valuable intangible right such as a person's reputation, we interpret Missouri law to preclude the recovery by Barton of mental-anguish damages resulting from a breach of the Shelter policy. Moreover, Missouri courts have held that the "mere failure to perform a contract cannot serve as the basis for tort liability unless the breach is also an independent tort." Haugland v. Parsons, 863 S.W.2d 609, 610 (Mo.Ct.App.1992). Although the breach of an insurance contract may lead to the independent tort of bad-faith refusal to pay an insurance claim, we have determined that Barton could not maintain her bad-faith claim against Shelter. Thus, she would not be entitled to mental-anguish damages for a breach of the Shelter policy.
REVERSED AND REMANDED.
SEE, BROWN, and STUART, JJ., concur.
LYONS and HARWOOD, JJ., concur in part and concur in the result in part.
HOUSTON, JOHNSTONE, and WOODALL, JJ., concur in the result.
MOORE, C.J., recuses himself.
LYONS, Justice (concurring in part and concurring in the result in part).

I.
Barton, a passenger in Walters's automobile, was injured when Walters's automobile collided with an automobile driven by Vaden. Vaden was uninsured. Walters had uninsured-motorist ("UM") coverage under a policy issued by Shelter Mutual Insurance Company. Under the terms of the Shelter Mutual UM coverage, Walters's passengers, as occupants of an insured automobile, are also insureds.
Barton sued Shelter Mutual on two separate breach-of-contract theories and coupled each breach-of-contract claim with a separate claim alleging bad-faith refusal to pay an insurance contract. First, Barton alleged breach of contract based upon Vaden's negligence, giving rise to Shelter Mutual's liability to Barton for UM benefits under the Shelter Mutual policy issued to Walters. Barton then alleged that Shelter Mutual had acted in bad faith in refusing to pay contract benefits arising from Shelter Mutual's UM coverage and related to Vaden's negligence. Second, Barton alleged breach of contract based upon Walters's negligence, giving rise to Shelter Mutual's liability to Barton for UM benefits under the Shelter Mutual policy issued to Walters. Barton then alleged that Shelter Mutual had acted in bad faith in refusing to pay contract benefits arising from Shelter Mutual's UM coverage and related to Walters's negligence.
The trial court submitted the foregoing claims to the jury; the jury awarded Barton $250,000 on her breach-of-contract claims, $250,000 in compensatory damages *1160 on her bad-faith claims, and $200,000 in punitive damages on her bad-faith claims.

II.
Turning first to Barton's claims against Shelter Mutual related to Vaden's alleged negligence, Barton has stated claims for rights as a first party to insurance benefits because, she says, she qualifies as an insured under Walters's UM policy with Shelter Mutual. Notwithstanding that Missouri law governs the contract, no one contends that Missouri law should be applied to Barton's bad-faith claim.
This Court recently summarized the standards applicable to bad-faith claims arising from first-party insurance benefits in Acceptance Insurance Co. v. Brown, [Ms. 1991938, June 29, 2001] ___ So.2d ___ (Ala.2001). In that case, we stated:
"A plaintiff has two methods by which to establish a bad-faith refusal to pay an insurance claim: he or she can prove the requirements necessary to establish either an `ordinary' case or an `extraordinary' case. State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 306 (Ala.1999); Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 976 (Ala.1998).
"In an `ordinary' bad-faith claim, the plaintiff bears a heavy burden. LeFevre v. Westberry, 590 So.2d 154, 159 (Ala. 1991) (citing National Sav. Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala. 1982)). To recover on such a claim, the plaintiff must prove: (1) the existence of an insurance contract; (2) an intentional refusal to pay the claim; and (3) the absence of any lawful basis for the refusal and the insurer's knowledge of that fact or the insurer's intentional failure to determine whether there is any lawful basis for its refusal. National Sec. Fire & Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala.1982); see Slade, 747 So.2d at 304 (reviewing the law of bad faith). `In short, [the] plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute.' Bowen, 417 So.2d at 183. In such a case, the plaintiffs contract claim must be so strong that the plaintiff is entitled to a preverdict JML [judgment as a matter of law]; if a fact issue makes a JML inappropriate, then the defendant is entitled to a JML on the plaintiffs bad-faith claim. National Sav. Life Ins. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala.1982).
"However, `keenly aware of the fact that there were countervailing policy considerations that weighed in favor of an insured's right to have his claim properly evaluated and promptly paid by the insurer,' this Court recognized `a different standard to be applied in certain unusual or extraordinary cases.' Thomas v. Principal Fin. Group, 566 So.2d 735, 742-43 (Ala.1990). `The rule in [extraordinary] cases [of bad faith] dispensed with the predicate of a preverdict JML for the plaintiff on the contract claim if the insurer had recklessly or intentionally failed to properly investigate a claim or to subject the results of its investigation to a cognitive evaluation.' Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 976 (Ala.1998) (citing Blackburn v. Fidelity & Deposit Co. of Maryland, [667 So.2d 661 (Ala.1995) ]; and Thomas v. Principal Fin. Group, supra). In State Farm Fire & Casualty Co. v. Slade, 747 So.2d at 318, this Court held that, in order to recover under a theory of an `extraordinary' case of bad-faith failure to investigate an insurance claim, an insured must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage *1161 with the insured when it refused to pay the insured's claim. This Court also recognized in Slade that `extraordinary' cases have been limited to those instances in which the plaintiff produced substantial evidence showing that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim. 747 So.2d at 306-07.
"In Slade, this Court recognized that contractual liability is a prerequisite for liability for bad faith. Therefore, one who cannot prove she was entitled to benefits under an insurance policy cannot recover on a bad-faith claim. See id. at 318 (noting that bad-faith liability is limited to those cases in which the insured is entitled to benefits under the policy)."
___ So.2d at ___.
As the main opinion correctly notes, Barton alleges only a "normal" bad-faith claim. Because a jury question existed as to whether Vaden's negligence caused the accident, thereby making it inappropriate to grant a preverdict judgment as a matter of law for Barton, I concur in the result reached in the main opinion that the bad-faith claim arising from the Vaden-related breach of contract should never have gone to the jury.

III.
Turning now to Barton's claims against Shelter Mutual related to Walters's alleged negligence, Barton is not an insured unless it can be established that Walters is an uninsured motorist. The main opinion correctly recognizes that this contract must be construed according to Missouri law; it further correctly notes that Missouri has no guest statute. This Court, in Hogan v. State Farm Mutual Automobile Insurance Co., 730 So.2d 1157 (Ala.1998), overruled on other grounds, Williamson v. Indianapolis Life Insurance Co., 741 So.2d 1057 (Ala.1999), held that an insured has a claim against his UM carrier when his claim against the driver of the vehicle in which he is a passenger is defeated by the operation of the guest statute (§ 32-1-2, Ala.Code 1975). I dissented in Hogan and I remain convinced that Hogan was incorrectly decided. However, I do not think that Hogan applies in this case, in view of the applicability of Missouri law.
In order to treat Walters as an uninsured motorist, we must first determine whether to apply Alabama's guest statute to a contract governed by Missouri law. Because Walters's liability is a question of tort, and not contract, law and because the automobile accident occurred in Alabama, the Alabama rule recognizing the applicability of the law of the place of the tort should control the issue of Walters's liability. Fitts v. Minnesota Mining & Mfg. Co., 581 So.2d 819 (Ala.1991). Under the guest statute, Walters is not liable to Barton because Barton has failed to allege or prove anything beyond simple negligence. We should then apply Missouri contract law to Barton's Walters-related claims asserting 1) that Shelter Mutual is liable to Barton for breach of the contract of insurance covering the automobile in which she was a passenger and 2) that Barton, therefore, was an insured. As the main opinion points out, in Byrn v. American Universal Insurance Co., 548 S.W.2d 186 (Mo.App. 1977), a Missouri appellate court rejected the theory this Court embraced in Hogan. In fact, in my dissenting opinion in Hogan, I noted that the result reached by the majority in that case was contrary to the *1162 law of other states, and I cited, among other authorities, Byrn. See Hogan, 730 So.2d at 1160 n. 3 (Lyons, J., dissenting). Consequently, Barton's claim for UM coverage against Shelter Mutual arising from Walters's immunity under the Alabama guest statute should fail on the authority of Byrn.
The main opinion distinguishes Hogan on the basis that that case allows a passenger to recover only against his own UM carrier. As previously noted, I do not consider Hogan applicable in this case. Even if it were, however, I am not persuaded that this distinction is valid. Barton, as a passenger, was an insured under Walters's UM coverage and, if Hogan is good law and if it applies, Walters's status as a driver who escapes liability by reason of the guest statute makes him an uninsured motorist. I agree with the conclusion reached in the main opinion that "[t]o allow Barton to recover under a policy that Walters, the driver, had purchased and paid for would be to controvert the purpose and tenor of the Alabama Guest Statute." However, I share that view only because I consider Hogan contrary to the purpose and tenor of the Alabama Guest Statute. In any event, I concur in the result reached by the main opinion because, regardless of how one gets there, Barton does not have a claim against Shelter Mutual related to Walters's alleged negligence and, therefore, no judgment in her favor on a bad-faith claim based on such a negligence claim can stand.

IV.
I concur only with the main opinion's reversal of the trial court's judgment on the breach-of-contract claim.
HARWOOD, J., concurs.
JOHNSTONE, Justice (concurring in the result).
I concur in the result. On remand, Barton, as an insured under Walters's Shelter policy, may proceed on the contract against Shelter for uninsured-motorist-coverage benefits on the theory that negligence by the uninsured motorist Vaden proximately caused Barton's injuries and losses. To recover, she need prove only that negligence by Vaden caused Barton injuries or losses covered by the Shelter policy. Walters's negligence, if any, will not be imputable against Barton. If the jury finds that negligence by Vaden proximately caused injury or loss to Barton, the jury should award her whatever of those injuries and losses Missouri law recognizes to be recoverable as benefits under the terms of the uninsured-motorist coverage of the Shelter policy.
WOODALL, Justice (concurring in the result).
I concur in the result. It is for a jury to determine whether Barton is legally entitled to recover damages for bodily injury from Vaden, the operator of the uninsured motor vehicle. A bona fide dispute concerning Vaden's liability precludes any recovery for bad-faith refusal to pay an insurance claim.
The vehicle operated by Walters was, of course, insured by Shelter. Therefore, Walters's vehicle does not fall within the policy's definition of "uninsured motor vehicle" in the Shelter policy. For that reason, Barton cannot recover uninsured-motorist benefits based upon a theory that Walters was negligent.
NOTES
[1] Both Barton and Walters would testify at trial that Vaden appeared to have been speeding just before the accident.
[2] Because Barton was insured under a policy issued by Infinity Southern Insurance Corporation ("Infinity") at the time of the accident, she also named Infinity as a defendant and asserted that she was entitled to uninsured-motorist benefits under her policy with Infinity. Barton settled her claims against Infinity; those claims were dismissed before trial.
[3] Barton voluntarily dismissed her claims against Vaden on August 18, 1998.
[4] The Uninsured Motorist Statute, § 32-7-23(a), Ala.Code 1975, provides that automobile insurance policies issued in Alabama shall cover "persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of" injury.
[5] Rule 44.1, Ala. R. Civ. P., requires a party who intends to raise an issue concerning the law of another state to give, at a minimum, reasonable notice of its intent to raise such an issue. Shelter notified the trial court and the parties in its motion for summary judgment, which was filed over one month before the trial of this case, of its intention to argue that Missouri law applied.
[6] It appears undisputed that Shelter does not conduct business in the State of Alabama.
[7] The Shelter policy defines an "insured" as the purchaser of the policy, "any other person while occupying an insured auto," or any person, "with respect to damages [who] ... is entitled to recover because of bodily injury to which this Coverage applies sustained by an insured...." The Shelter policy defines an "uninsured motor vehicle" as "a motor vehicle not insured by a bodily injury liability bond or insurance policy applicable at the time of the accident," "a hit-and-run motor vehicle," or "an insured motor vehicle where its liability insurer, because of its insolvency, cannot pay within the limits of the applicable financial responsibility law." However, the Shelter policy then states that an "uninsured motor vehicle does not mean a motor vehicle... owned by or furnished or available for the regular use of" the insured.
[8] Barton never asserted that Walters's conduct was willful or wanton.
[9] Although Barton alleges that Shelter did not properly preserve this issue for appellate review, Shelter excepted to the trial court's charge that damages for mental anguish were recoverable and raised this issue again in its motion for a new trial. Thus, we will consider whether the trial court erred in applying Alabama damages law to the breach-of-contract claim. However, because Shelter did not object to the damages awarded on the basis that they were excessive, it failed to properly preserve for appellate review the issue of excessiveness of the mental-anguish damages.
[10] In New Hampshire Fire Ins. Co. v. Curtis, supra, this Court held that Florida law applied regarding a conditional sales contract, where the conditional sales contract, its transfer to an acceptance corporation, and the policy of insurance were all executed on the same day in Florida.