**ATLANTIC SPECIALTY INSURANCE COMPANY, Plaintiff–Counter Defendant–Appellee,**

v.

**MR. CHARLIE ADVENTURES, LLC, Kim P. Kornegay, Defendants–Counter Claimants–Appellants.**

**No. 15–12657**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 29, 2016.

William E. Shreve, Jr., Allen Eugene Graham, Phelps Dunbar, LLP, Mobile, AL, for Plaintiff–Counter Defendant–Appellee.

John D. Richardson, Aaron Mathew Wiley, Richardson Law Firm, LLC, Mobile, AL, for Defendants–Counter Claimants–Appellants.

Before TJOFLAT, MARCUS, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Mr. Charlie Adventures, LLC, and Kim P. Kornegay (collectively, "Kornegay"), appeal the district court's grant of summary judgment in favor of Atlantic Specialty Insurance Company ("Atlantic") on Kornegay's bad-faith claim arising out of an insurance policy Atlantic had issued to provide coverage for a 40–foot yacht, called the "Mr. Charlie." On appeal, Kornegay argues that the district court erred in granting Atlantic's motion for summary judgment on Kornegay's bad-faith counterclaim because Atlantic had no arguable reason to deny the insurance claim. After careful review, we reverse and remand.

We review a district court's order granting summary judgment *de novo*, applying the same standard as the district court. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir.2003). We view the material presented and draw all factual inferences in the light most favorable to the non-movant. *Id.* Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Where the defendant moves for summary judgment, it bears the initial responsibility of pointing to the pleadings and other record evidence to demonstrate the absence of a genuine issue of material fact on an essential element of the plaintiff's claim. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir.1993). The burden then shifts to the plaintiff to point to evidence that creates a triable issue on that element. *Id.* at 1116.

The relevant background is this. On March 3, 2013, while Kornegay was operating the Mr. Charlie, a fire started in the

engine room, which caused the Mr. Charlie to burn to the water line, completely destroying the yacht and its contents. Kornegay reported the loss to Atlantic and filed a claim under the insurance policy for the policy limits. The policy covered damages to the Mr. Charlie and its contents, up to agreed-upon limits, but provided that Atlantic would not pay for:

[A]ny loss, damage or expense caused by or resulting from:

1. Wear and tear; gradual deterioration; weathering; bubbling; osmosis; blistering; delamination of fiberglass or plywood; corrosion; rusting; electrolysis; mold; rot; inherent vice; *vermin;* insects or marine life; [or]

2. *Your* failure to maintain the covered *yacht* in good condition and repair.

On September 16, 2013, Atlantic sent Kornegay a letter, notifying him that it was denying the claim based on reports by Guy Plaisance and Gary Jones—a marine surveyor and a fire-cause-and-origin investigator Atlantic had hired to investigate the fire—that concluded that the fire had been "caused by or resulted from growth of marine life on or in the vessel, which restricted the intake or flow of water to cool the engine and exhaust system." Atlantic also said that Plaisance's and Jones's reports "note[d] maintenance problems related to the loss."

After denying Kornegay's claim, Atlantic filed a declaratory judgment action in district court, seeking a declaration that it did not owe coverage for the fire damage. Kornegay counterclaimed, seeking damages for breach of contract and bad-faith refusal to pay the insurance claim. The parties thereafter cross-moved for summary judgment. As for the bad-faith claim, Atlantic argued that it had an arguable reason for denying Kornegay's insurance claim—namely, Plaisance's and

Jones's reports that concluded that the growth of marine life on the starboard engine's seawater intake screen had caused the fire. Kornegay also moved to exclude expert testimony from Plaisance and Jones.

Notably, the district court granted Kornegay's motion to exclude the experts, on the ground that the reports were unreliable *for five reasons* under Fed.R.Evid. 702, which governs expert testimony. First, the district court found that the reports incorrectly stated the percentage of open area on the yacht's intake screens, which had been calculated by engineer and metallurgist Dr. Kendall Clarke. The reports provided that, due to marine growth, the intake screen for the starboard engine was only 20% open, while the intake screen for the identical port engine—where no fire started—was 26% open. Plaisance opined that the port screen's 6% additional open area was sufficient to keep the port engine from catching fire. But during discovery, it came to light that Plaisance had reversed the numbers and relied on 26% open for the starboard intake screen, and 20% open for the port intake screen.

Second, the reports relied on information Plaisance had received from John Moran, an employee of the screen manufacturer, who advised that the starboard screen on the Mr. Charlie had been too clogged to flow the required amount of water to cool the engine exhaust. The district court found that the information Plaisance received from Moran was not sufficiently reliable because: (a) Plaisance did not know Moran's qualifications; (b) Plaisance incorrectly told Moran that the starboard screen was only 20% open; (c) Plaisance initially provided Moran with the data sheet for a different engine than the one at issue in this case, and Moran did not run new calculations once Plaisance provided him with the data sheet for the

correct engine, and (d) Moran told Plaisance only that he "[thought]" there "probably" would not be enough water flow to cool the exhaust.

Third, the district court found that Plaisance and Jones violated the scientific method by forming a conclusion first and then attempting to find support for that conclusion. The district court noted that on March 29, 2013, Plaisance wrote—in an email to Atlantic's claims adjuster Rita Boggan—that he believed the starboard engine had overheated as a result of the seawater intake screen being too occluded to allow sufficient water flow to cool the engine exhaust. But about one month later, two mechanics Atlantic hired to examine the engines determined that the starboard engine had not overheated. Subsequently, Plaisance sent an email to Jones and the two mechanics, with a copy to Boggan, asking whether it was possible that, due to limited seawater flow through the intake screen, the exhaust temperatures could exceed 257 degrees Fahrenheit, such that the engine would not overheat, but the exhaust tube would start to burn. Plaisance concluded in his final report that the fire had started in this manner. During his deposition, however, Plaisance could not confirm that he had ever gotten an answer to his question about this theory, and Atlantic proffered no evidence showing that he had.

Fourth, Plaisance's and Jones's reports incorrectly said that the exhaust tube could withstand temperatures up to 259 degrees, when, in fact, the exhaust tube was rated to withstand temperatures up to 350 degrees. While Atlantic claimed that the discrepancy did not matter because the engine's internal exhaust ranged from 900–1100 degrees, neither expert had determined what temperature the exhaust gases would have had in the starboard engine after having been cooled by whatever wa-

ter came in through the partially occluded screen.

Finally, Plaisance and Jones had recommended additional inspections on other parts of the starboard and port engines to test their theory that restricted seawater flow through the starboard intake screen had caused the starboard exhaust tube to burn. These extra inspections were never done, yet in their final reports, Plaisance and Jones concluded that the fire had, in fact, occurred in this way. The district court noted that, while all of the requested inspections may not have been needed for the experts to reach a reliable conclusion, when it became clear that the starboard engine did not overheat as Jones and Plaisance had originally believed, "more testing or analysis was clearly needed to explain the circumstances."

The district court then determined that, once Plaisance's and Jones's reports were excluded, Atlantic had no admissible evidence to meet its burden to prove that the fire damage to the Mr. Charlie was excluded under Kornegay's policy. *See Acceptance Ins. Co. v. Brown*, 832 So.2d 1, 12 (Ala.2001). Accordingly, the district court granted Kornegay's motion for summary judgment on Atlantic's declaratory judgment claim and on Kornegay's breach-of-contract counterclaim. It also held, however, that Kornegay had proffered no evidence showing that, at the time it denied his claim, Atlantic knew or had reason to know that the expert reports were unreliable. The district court thus concluded that the reports provided Atlantic with an arguable basis for the denial, and granted Atlantic's motion for summary judgment on the bad-faith claim. This appeal follows.

This is a diversity case, and the parties agree that Alabama law applies. Under Alabama law, a bad-faith claim comes in two varieties: "normal" and "abnormal." *Emps.' Benefit Ass'n v. Grissett*, 732 So.2d

968, 976 (Ala.1998). (quotations omitted). In the normal case, the plaintiff must prove four elements: (a) "an insurance contract between the parties and a breach thereof by the defendant;" (b) "an intentional refusal to pay the insured's claim;" (c) "the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);" and (d) "the insurer's actual knowledge of any legitimate or arguable reason." *Id.* (quotations omitted). In the abnormal case, where the plaintiff relies on the defendant's reckless or intentional failure to properly investigate his claim, the plaintiff must prove elements (a) through (c), plus (e) "the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Id.* (quotation omitted).

Alabama courts have made clear that, "[w]hen a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Nat'l Sec. Fire & Cas. Co. v. Bowen,* 417 So.2d 179, 183 (Ala.1982). Thus, a plaintiff seeking to prove a bad-faith claim has a heavy burden. *Shelter Mut. Ins. Co. v. Barton,* 822 So.2d 1149, 1154 (Ala.2001). To establish a *prima facie* case, the plaintiff "must show that the insurer's decision not to pay was without any ground for dispute." *Id.* (quotation omitted). In so doing, the plaintiff "must eliminate any arguable reason propounded by the insurer for refusing to pay the claim." *Id.* (quotations omitted). In assessing whether the insurer had an arguable reason for denying the claim, the court must look to the information before the insurer at the time it denied the claim. *See Bowen,* 417 So.2d at 183.

Generally, in a normal bad-faith case, to prove the absence of a debatable reason to deny the claim, the plaintiff must demonstrate that he is entitled to a pre-verdict judgment as a matter of law on his breach-of-contract claim. *Grissett,* 732 So.2d at 976. Thus, if a factual dispute makes judgment as a matter of law for the plaintiff inappropriate on the breach-of-contract claim, the defendant is entitled to judgment as a matter of law on the plaintiff's bad-faith claim. *Id.* Where the plaintiff *is* entitled to judgment as a matter of law on his breach-of-contract claim, the defendant may still be entitled to judgment as a matter of law on the plaintiff's bad-faith claim if the defendant can show that it had an arguable reason to deny the claim: for example, if it relied on a legal position that was arguable, but was rejected by the trial court. *Safeco Ins. Co. of Am. v. Sims,* 435 So.2d 1219, 1225 (Ala.1983) (Jones, J., concurring); *see Attorneys Ins. Mut. of Ala., Inc. v. Smith, Blocker & Lowther, P.C.,* 703 So.2d 866, 869–71 (Ala.1996) (affirming grant of judgment as a matter of law for the insurer on bad-faith claim, where the insurer denied the insurance claim based on an arguable reading of the insurance policy, even though the trial court had rejected the insurer's policy interpretation in granting judgment as a matter of law for the insured on breach-of-contract claim).

In the abnormal case, where the plaintiff relies on the defendant's reckless or intentional failure to properly investigate his claim, a factual dispute on the breach-of-contract claim is not fatal to the plaintiff's bad-faith claim. *Grissett,* 732 So.2d at 976. However, the plaintiff must still prove that the defendant lacked a debatable reason to deny the claim. *State Farm Fire and Cas. Co. v. Brechbill,* 144 So.3d 248, 258 (Ala. 2013). Evidence of the defendant's intentional failure to determine whether a lawful basis existed may be used as proof that no such basis, in fact, existed. *Cont'l Assurance Co. v. Kountz,* 461 So.2d 802, 805 (Ala.1984).

In this case, Kornegay has sought to prove both a normal and abnormal case of

bad faith, and argues that the district court erred in determining that Plaisance's and Jones's reports provided Atlantic with an arguable reason to deny the claim. We agree. Kornegay has proffered sufficient evidence to create a triable issue as to whether Atlantic should have known the reports were unreliable—indeed, the very evidence the district court relied upon in finding the reports unreliable. Specifically, there are numerous emails from Plaisance to Boggan, in which Plaisance informed Boggan of: (1) his initial theory that restricted seawater flow through the starboard intake screen had caused the starboard engine to overheat; (2) the mechanics' investigation that determined the starboard engine had not overheated; (3) Plaisance's question to Jones and the mechanics as to whether it was possible that restricted seawater flow through the starboard intake screen could have caused the exhaust pipe to burn without overheating the engine; and (4) Plaisance and Jones's recommendation that additional testing be done on the engine parts to prove or disprove that theory. In addition, Boggan testified in her deposition that: (1) she did not know if Plaisance had ever gotten an answer to his question as to whether it was possible for restricted seawater flow to cause the exhaust pipe to burn without overheating the engine; and (2) she did not know whether additional testing had been done on the engine parts to prove or disprove Plaisance and Jones's theory.

On this record, Kornegay has proffered sufficient evidence to create a triable issue as to whether Atlantic had an arguable reason to deny his claim. *See Lord v. Allstate Ins. Co.*, 47 F.Supp.3d 1288, 1308–09 (N.D.Ala.2014) (concluding that the opinion of an inexperienced adjuster did not provide an arguable basis for denying the plaintiff's claim, where, among other things, the adjuster recommended that the insurer obtain an engineer's evaluation but

the insurer failed to do so); *see also Affiliated FM Ins. Co. v. Stephens Enters.*, 641 So.2d 780, 783–84 (Ala.1994) (affirming the trial court's denial of the defendant's motion for judgment as a matter of law on the plaintiff's bad-faith claim, where the defendant relied on expert reports that had been prepared with inaccurate information the experts had been given by the defendant). While Atlantic cannot be found liable to the extent its conduct constituted mere negligence, *see Davis v. Cotton States Mut. Ins. Co.*, 604 So.2d 354, 359 (Ala.1992), a reasonable jury could find that Atlantic knew or had reason to know that Plaisance's and Jones's reports were unreliable and that the reports did not provide an arguable basis for concluding that the fire damage to the Mr. Charlie had, in fact, been caused by the growth of marine life on the starboard intake screen. Accordingly, we reverse the district court's grant of summary judgment for Atlantic on Kornegay's bad-faith claim, and remand the case for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**