NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0547

BUB TUCKER, II

VERSUS

GREGORY HILL, HARRY MCKNEELY & SON, INC. D/B/A HARRY
MCKNEELY & SON FUNERAL HOME, RICK FOSTER IN HIS
OFFICIAL CAPACITY AS CORONER AND TANGIPAHOA PARISH
CORONER'S OFFICE

*DATE OF JUDGMENT:*    'JAN 0 9 2020

ON APPEAL FROM THE TWENTY FIRST JUDICIAL DISTRICT COURT
NUMBER 2017-0002955, DIVISION F, PARISH OF TANGIPAHOA
STATE OF LOUISIANA

HONORABLE ELIZABETH WOLFE JUDGE

* * * * * *

René Paul Frederick
Jeanne M. Mauldin
Covington, Louisiana

Counsel for Plaintiff-Appellee
Bub Tucker, II

Christopher M. Moody
Brad J. Cascio
Albert D. Giraud
Hammond, Louisiana

Counsel for Defendants-Appellants
Gregory Hill, and Harry McKneely &
Son, Inc. d/b/a Harry McKneely &
Son Funeral Home

* * * * * *

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

**Disposition: REVERSED AND REMANDED.**

**CHUTZ, J.**

Defendants-appellants, Harry McKneely & Son, Inc. d/b/a Harry McKneely & Son Funeral Home (McKneely), and its employee, Gregory Hill, appeal the trial court's final default judgment, awarding damages for the cremation of the remains of Bob Tucker (decedent), the father of plaintiff-appellee, Bob Tucker, II. We reverse.

## BACKGROUND

Tucker instituted this action on October 17, 2017, against McKneely and Hill, as well as the Tangipahoa Parish Coroner, Rick Foster, and the Coroner's Office, averring that Tucker had the legal right to control the interment of decedent and that, despite Tucker's lack of consent, the decedent was nevertheless cremated by McKneely. Tucker claimed that under the pretext that the decedent's remains had been "abandoned," and without notifying him, McKneely and Hill transferred the decedent's body to the Coroner's Office and fraudulently obtained an authorization to cremate the decedent's remains. Tucker sought damages for intentional infliction of emotional distress, negligent infliction of emotional distress, and mental anguish.

Although Coroner Foster and his office timely answered the lawsuit, McKneely and Hill did not. On Tucker's motion, the trial court entered a preliminary default on April 30, 2018. A confirmation hearing was held on December 3, 2018, at which testimony and documentary evidence were adduced. At the conclusion of the hearing, the trial court rendered judgment "as prayed for." On December 17, 2018, the trial court signed a judgment, in favor of Tucker and

2

against McKneely and Hill, in the amount of $1,500,000. McKneely and Hill appealed.[1]

## SUFFICIENCY OF SERVICE OF PROCESS

McKneely and Hill initially assert that the petition was improperly served on McKneely by domiciliary service on Hill, apparently while he was at work at the funeral home. McKneely and Hill assert that McKneely is a domestic corporation in good standing. Therefore, they urge that personal service on McKneely's registered agent for service of process was required.[2] Reasoning that the service of the petition was improper, McKneely and Hill contend the default judgment against McKneely is an absolute nullity.

The nullity of a final judgment may be demanded for vices of either form or substance. La. C.C.P. art. 2001. A final judgment shall be annulled if rendered against a defendant who has not been served with process as required by law. La. C.C.P. art. 2002A(2).

Generally, the question of sufficiency of service should not be raised for the first time on appeal, but rather should be raised in a suit to annul the judgment. *Tour Holdings, L.L.C. v. Larre*, 2018-0503 (La. App. 1st Cir. 12/6/18), 267 So.3d 735, 737. The justification for requiring a separate suit is so that a hearing can be held to ascertain facts regarding whether defendants were properly served. *Id.*

The record is devoid of evidence establishing either that McKneely is a domestic corporation or from which to determine whether a designated agent for service of process existed or that, in attempting to make service, the process server was unable, after due diligence, to serve the designated agent and, therefore,

---

[1] The trial court also issued an order directing that McKneely and Hill immediately place Tucker in possession of decedent's cremated remains. McKneely and Hill have not appealed this portion of the judgment.

[2] See La. C.C.P. art. 1261A ("Service of citation or other process on a domestic or foreign corporation is made by personal service on any one of its agents for service of process.").

3

effectuated service on Hill at McKneely's place of business.[3] Accordingly, we find this claim insufficient to preclude appellate review of the judgment rendered against McKneely and Hill.

## PROPRIETY OF THE FINAL DEFAULT JUDGMENT

The process for obtaining a preliminary default when the defendant has failed to answer a petition timely is uncomplicated. *Arias v. Stolthaven New Orleans, L.L.C.*, 2008-1111 (La. 5/5/09), 9 So.3d 815, 819. It may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court. But the preliminary default shall consist merely of an entry in the minutes. La. C.C.P. art. 1701A. If no answer or other pleading is timely filed, the confirmation of the preliminary default may be made after two days, exclusive of holidays, from the entry of the preliminary default. La. C.C.P. art. 1702A.

Confirmation of a preliminary default is similar to a trial and requires, with admissible evidence, "proof of the demand that is sufficient to establish a prima facie case." La. C.C.P. art. 1702A; *Arias*, 9 So.3d at 820. The elements of a prima facie case are established with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant. *Id.* In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at trial on the merits. *Id.* A plaintiff seeking to confirm a preliminary default must prove both the existence and the validity of his claim. *Id.*

---

[3] See La. C.C.P. art. 1261B(2) (If the corporation has failed to designate an agent for service of process, if there is no registered agent by reason of death, resignation, or removal, or if the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent, service of the citation or other process may be made ... (2) By personal service on any employee of suitable age and discretion at any place where the business of the corporation is regularly conducted.).

An appellate court's review of the default judgment is limited to determining the sufficiency of the evidence offered in support of the judgment. *Arias*, 9 So.3d at 818. That determination is a factual one governed by the manifest error standard of review. *Id.*

Maintaining that he had the rights to control and authorize the interment of the decedent as well as to serve as the authorizing agent for cremation, Tucker alleged that McKneely and Hill were liable to him for the damages he suffered when they cremated his father's body without his permission. He contends that his testimony and the documentary evidence support the award of damages as a result of either intentional or negligent infliction of emotional distress and mental anguish.

La. R.S. 8:655A, addressing the right of disposing of remains, provides that unless other specific directions have been given or the designation of a specific person to control disposition has been made by the decedent in the form of a notarial testament or a written and notarized declaration, the following relevant persons, in the priority listed, have the right to control and authorize the interment of a deceased person: (1) the person designated to control disposition by the decedent in the form of a notarial testament or a written and notarized declaration; (2) the surviving spouse, if there is no pending petition for divorce filed by either spouse prior to the death of the decedent spouse; or (3) a majority of the surviving adult children of the decedent. Similarly, relative to the authorizing agent for the cremation of human remains, La. R.S. 37:876A states that the following relevant persons, in the priority listed, have the right to serve as an authorizing agent for cremation: (1) any person arranging the cremation, if the decedent has given specific directions in the form of a notarial testament or a written and notarized declaration providing for disposition of his remains by cremation; (2) the person

5

designated to control disposition by the decedent in the form of a notarial testament or a written and notarized declaration; (3) the surviving spouse, if there is no pending petition for divorce filed by either spouse prior to the death of the decedent spouse; and (4) a majority of the surviving adult children of the decedent.

Tucker testified that he was aware that decedent had two wills, but that he was not "given ... or showed ... at that time ... that ... [decedent] wanted to be cremated." According to Tucker, neither he nor the decedent desired to have the decedent cremated, and Tucker made that "expressly clear" to McKneely. Although he testified that he was the decedent's son and only child, Tucker offered no evidence, either documentary or testimonial, to show that the decedent had not executed a written and notarized declaration or had no surviving spouse at the time of death.[4] Thus, Tucker failed to establish a prima facie case that he was the person in the priority lists who had the statutory rights to control and authorize the interment and to serve as authorizing agent under La. R.S. 8:655A and 37:876A.

Additionally, we note that La. R.S. 9:1551 provides for the disposition of remains, stating in relevant part:

> A. (1) Upon oral or written refusal by the person or persons authorized in R.S. 8:655 to provide for the disposition of the remains of a decedent, the coroner is authorized to immediately release the remains of the decedent to any interested person who will claim the remains and provide for the disposition of the remains.
>
> (2) The coroner shall have and exercise custody over the remains of all persons who die within the parish and whose remains are abandoned, not claimed, or unclaimed by the person or persons authorized in R.S. 8:655, or by the person to whom the coroner has released the remains under the provision of Paragraph (1) of this Subsection, and the remains of persons that are abandoned while in the possession of a funeral establishment as provided in Subsection C of this Section. ...

---

[4] Mindful that in this review each element of plaintiff's prima facie case must be established with "competent evidence, as fully as though each of the allegations in the petition were denied by the defendant," see *Arias*, 9 So.3d at 820, the allegation in Tucker's petition that "[a]t the time of his death, [the decedent] was divorced," is insufficient to establish that decedent had no surviving spouse who would have been superior in rank to Tucker in the priority lists of La. R.S. 8:655A and 37:876A.

6

C. (1) If the remains of a decedent in the possession of a funeral establishment have been abandoned, the funeral establishment shall notify by a written, notarized document, the coroner for the parish of the decedent's domicile stating the factual history and circumstances of the abandonment. ...

D. For purposes of this Section, **remains of a decedent in the possession of a funeral establishment** or healthcare facility **shall be deemed abandoned if the person or persons authorized in R.S. 8:655** or in Subsection A of this Section **to control the disposition** refuses orally or in writing to make arrangement or provide for the disposition of the decedent, or **fails to make arrangement or to provide for the disposition of the remains of a decedent** after death at a healthcare facility or **after the remains are in the possession of the funeral establishment.**

E. Once coroner jurisdiction over abandoned, not claimed, or unclaimed remains has been established, all rights to control the disposition of the remains as listed in R.S. 8:655(A) are waived and terminated. The coroner shall then take and exercise custody of the remains for disposition pursuant to the provisions in this Section. [Emphasis added.]

Tucker testified that he received a call from his mother advising him that the decedent had died. He stated the date of death was October 24, 2016. He received a call from Hill the following day and over the two days after decedent's death, Tucker had telephone communications with Hill on six occasions for a total of 18 minutes. Tucker also identified two text messages that he sent to Hill's cell phone number on October 26, 2016. One text included Tucker's contact information. In the other, Tucker asked Hill to contact his aunt to advise her that Hill and Tucker had spoken "and what [Tucker's] intentions are as long as we can agree to terms everything is going to be ok and workout [sic]." According to Tucker, the reason for the telephone conversations was that McKneely wanted him to go to the funeral home immediately and "sign cremation papers."

Tucker stated that he never gave McKneely authorization to cremate the decedent. He believed McKneely knew that he was the person who had the legal authority to make decisions and cremated the decedent despite Tucker's lack of

7

consent. Tucker learned the decedent had been cremated when, after several "days of continuous calling all [of] the sudden the calls completely stopped." Tucker "felt something was going on" and contacted the coroner's office, at which time he was informed that McKneely had submitted paperwork and the decedent's remains had been cremated. Tucker offered into evidence the letter and copy of a form entitled "CORONER'S PERMISSION TO CREMATE," authorizing the cremation of the decedent on November 8, 2016.

In his testimony, at no time did Tucker offer any evidence establishing that he made an arrangement or otherwise provided for the disposition of the decedent. Thus, the record fails to establish that between McKneely's initial contact with Tucker on October 25, 2016 through November 8, 2016, when the cremation was authorized, Tucker made any arrangements to provide for the interment of the decedent. Under La. R.S. 9:1551D, the remains of the decedent, which Tucker acknowledged were in McKneely's possession, were deemed abandoned by any person who may have had the right to control and authorize the interment of the decedent pursuant to La. R.S. 8:655.

This court has recognized that a claimant may have a right to recover whatever emotional distress he can prove since the right to dispose of a corpse by decent sepulture includes the right to the possession of the body in the same condition in which death leaves it. Thus, an action for damages lies for the unauthorized mutilation of a dead body. See *Blanchard v. Brawley*, 75 So.2d 891, 894 (La. App 1st Cir. 1954), citing 25 C.J.S., *Dead Bodies*, § 8. However, our review of this final default judgment shows that Tucker failed to establish by competent evidence sufficient to establish a prima facie case that either he was the person with the statutory rights to control and authorize the interment and to serve as authorizing agent under La. R.S. 8:655A and 37:876A; or that he made

8

sufficient arrangements or otherwise provided for the disposition of the decedent's remains as necessary under La. R.S. 9:1551D so as to support a finding that McKneely or Hill were negligent. The trial court's conclusion to the contrary is manifestly erroneous.

## DECREE

For these reasons, the trial court's judgment is reversed and the matter is remanded to the trial court. Appeal costs are assessed against plaintiff-appellee, Bob Tucker, II.

**REVERSED AND REMANDED.**